In the Matter of the Gross Production and Petroleum Excise Tax Protest of Arkla, Inc. Regarding the Settlement Payment made to Ricks Exploration.

**NORAM ENERGY CORPORATION, formerly Arkla, Inc., Appellant,**

v.

**OKLAHOMA TAX COMMISSION, Appellee.**

**Nos. 84934, 84935, 84936 and 84937.**

Court of Appeals of Oklahoma, Division No. 3.

Dec. 5, 1995.

Certiorari Dismissed March 10, 1997.

Kenneth L. Hunt, J. Kevin Hayes, Tulsa, for Appellant.

Gregory K. Frizzell, Kathryn Bass, Oklahoma City, for Appellee.

*OPINION*

HUNTER, Presiding Judge:

Appellant, Noram Energy Corporation, formerly Arkla, Inc., hereafter "Arkla", seeks review of an order of the Oklahoma Tax Commission which denied its protest to a gross production tax assessment issued pursuant to 68 O.S.1991, § 1009(g). By orders of the Supreme Court, this appeal is a companion appeal to six other pending appeals.[1] The proposed assessment which is the subject of this and the companion appeals, was issued by Appellee, the Oklahoma Tax Commission, hereafter "Commission", on February 22, 1989 against Arkla, after an audit of Arkla, for a total amount of $11,893,731.03. This amount included gross production taxes due and petroleum excise taxes due, with interest and penalties thereon, and is based upon thirty-eight alleged "take-or-pay" settlements between Arkla, a gas purchaser and seller, and certain natural gas producers. Upon Arkla's motion, the Administrative Law Judge (ALJ) of the Commission separated Arkla's protest to the assessment into 38 separate cases based upon the 38 separate settlement agreements, which are designated as P–89–166–A through P–89–166–LL. The present appeal, P–89–166–Z, involves Arkla's protest of the assessment against settlement proceeds paid to the gas producer, Ricks Exploration.

In Order No. 94–12–15–024, Commission adopted the Findings, Conclusions and Recommendations of the ALJ and amended the assessment against Arkla for the Ricks settlement. As amended, Arkla's liability on the Ricks settlement for taxes, penalties and interest totaled $536,291.62. The report of the ALJ includes findings of fact which are universal to all 38 proceedings. It also includes findings of fact which apply to the particular proceeding, which in this case is the Ricks settlement.

The ALJ found that in the early 1980's, in response to dropping gas sales and claims by

---

1. The Supreme Court's January 20, 1995, order designated this appeal, # 84,934 as a companion case with # 84,935, # 84,936, and # 84,937. By order dated March 10, 1995, appeal # 85,088, # 85,074 and # 85,075 were also made companions with these cases.

producers against Arkla, Arkla entered into negotiations with its producers to reform its gas purchase contracts. The central focus of these negotiations were the claims of the producers that Arkla owed payments for deficiencies under the pricing provisions and the quantities provisions of the gas purchase contracts. Arkla denied it was liable under the quantities provisions. To settle the disputes, Arkla made either recoupable refundable or recoupable non-refundable prepayments to the producers and in exchange for contract reformation, released from the contracts the gas which was in excess of Arkla's needs.[2] In return, the producers released the gas sold to third parties from Arkla's contract commitments, gave credits against minimum purchase obligations for the gas sold to third parties and *waived any past take or pay claims.*[3]

Many of the Arkla settlements, including the one with Ricks, were effected by the execution of a settlement agreement, an amendment to the gas purchase contract and a release agreement. The gas purchase agreement between Arkla and Ricks covered property located exclusively in Oklahoma and contained a "take-or-pay" provision. To settle a controversy between Ricks and Arkla concerning Arkla's obligations under the quantities provisions of the gas purchase contract, the parties entered into a settlement agreement on June 28, 1988.

The Ricks settlement agreement states:

WHEREAS, under the Gas Purchase Contracts designated in Exhibit "A" attached hereto (the "Contracts"), Seller agreed to sell and Buyer agreed to purchase gas production from the properties covered by the Contracts.

WHEREAS, a dispute has arisen between Buyer and Seller concerning (I) the obligations of Buyer under the "Quantities" provisions of the Contracts, and (ii) whether Buyer has performed its obligations thereunder in good faith.

WHEREAS, as a result of the foregoing dispute, Buyer and Seller are involved in pending litigation in the United States District Court for the Western District of Oklahoma, styled *Ricks Exploration Company vs. Arkla, Inc.,* Case No. CIV–86–2142–R.

WHEREAS, Buyer and Seller desire to settle and compromise all aspects of the foregoing dispute under the terms and conditions set forth below.

The settlement agreement then provides Arkla shall pay Ricks $4,589,792.86, which represents a prepayment for certain volumes of natural gas from certain wells. Arkla is entitled to *fully recoup the prepayment,* without further payment, on a well by well basis by taking, but not paying for, 50% of the gas purchased by Arkla from each well. If Ricks fails or is unable to deliver the quantity of gas requested or if full recoupment by January 1, 1998, is prevented, Ricks is required under the settlement to either make a cash refund to Arkla equal to the undelivered prepared volumes or to deliver sufficient quantities of gas to allow full recoupment. Exhibit A to the settlement agreement, entitled "Arkla Take or Pay Settlement", lists the producers and properties covered by the settlement agreement, including "take or pay volumes" and "take or pay values".

In addition, the parties executed a release agreement, which releases all gas in excess

---

**2.** In general, the term "recoupable proceeds" refers to those proceeds received by the producer under the take-or-pay settlement agreement with respect to which the producer has an obligation to deliver gas to the purchaser under a gas purchase contract. "Nonrecoupable proceeds" refers to those proceeds received by the producer from the purchaser under the take-or-pay settlement agreement with respect to which the producer has no additional obligation to the purchaser. See Brown and McGregor, *Fallout From the Take-or-Pay Wars: Gross Production*

*Tax on Proceeds Received in Settlement of Take-or-Pay Litigation,* 43 Okla.L.Rev. 457 (1990).

**3.** In a typical gas purchase contract, under a "take-or-pay" or "deficiency" clause, a gas purchaser is obligated to take and pay for, or pay for whether or not taken, a specific volume of gas during specific time periods. The clause apportions the risks of natural gas production and sales between the buyer and seller, with the seller bearing the risks of production and the buyer bearing the risks of market demand. *Supra,* footnote 2, at page 457.

of the volumes requested by Arkla from the gas purchase contract for the period of December 1, 1987 through January 1, 1998. The ALJ found the release agreement also provided that the obligation to transport released gas was, in part, in settlement of the take or pay dispute. Under the amendment to the gas purchase contract, the pricing provisions of the contract were amended and the parties were afforded semi-annual price renegotiation rights.

On appeal, Arkla argues Commission's order is not supported by the evidence. Specifically, Arkla maintains it produced *uncontroverted* evidence that the entire prepayment made to Ricks was not a "take-or-pay" payment and therefore, not subject to 68 O.S.1991, § 1009(g).[4] If the assessment under § 1009(g) is proper, Arkla wants the penalties and interest waived under 68 O.S.1991, § 220(a). Arkla further maintains the assessment violates the substantive due process and equal protection guarantees of the 14th Amendment of the United States Constitution and violates Art. 10, § 5 and Art. 5, § 59 of the Oklahoma Constitution. Arkla argues the invalidity of the gross production tax assessment requires us to hold the petroleum excise tax assessment invalid.

This Court will review the entire record made before an administrative agency acting in its adjudicative capacity to determine whether the findings and conclusions set forth in the agency order are supported by substantial evidence. *Dugger v. State ex rel. Oklahoma Tax Commission,* 834 P.2d 964 (Okla.1992). If the record contains substantial evidence in support of the facts on which the decision is based and the order is otherwise free of error, the order will be affirmed. *Dugger,* at 968; *In the Matter of the Sales Tax Protest of Finaserve, Inc.,* 828 P.2d 440 (Okla.App.1991). A protesting taxpayer has

the burden of proving a tax assessment is erroneous. *Enterprise Management Consultants, Inc. v. State ex rel. Oklahoma Tax Commission,* 768 P.2d 359 (Okla.1988).

Subsection (g) of 68 O.S.1991, § 1009 provides:

> (G) Pursuant to the provisions of a gas purchase contract or agreement, if the first purchaser makes payments to the producer as a result of the failure or refusal of said purchaser to take gas, said payments, for purposes of this article, are hereby deemed to be part of the gross value of gas taken according to said contract or agreement. The gross production tax shall be calculated upon the gross value, including said payments, in accordance with the provisions of this article. Gas on which the gross production tax has been paid in this manner when taken by said purchaser shall be reported as gas on which said tax has been paid. If said gas, which corresponds to such payments, is not taken but payments therefor are retained by the producer, then said payments are hereby deemed to be a premium on gas which was taken under said contract or agreement.

The Gross Production Tax Code, 68 O.S. 1991, § 1001 et seq., provides for the levy of a tax on the gross value of production of oil and gas. "The tax is not added to the price of the gas, as is a sales tax, but rather, it is deducted from the first sales proceeds of the gas." *Exxon Corporation v. Oklahoma Tax Commission,* 873 P.2d 306 (Okla.App.1993). Under subsection (g) to § 1009, added to the Code in 1983, take-or-pay payments and payments made to settle take-or-pay disputes, which are made by a purchaser are deemed part of the gross value of the gas taken under the contract and thus subject to the gross production tax. *Exxon,* at 309.[5]

---

4. Arkla has recouped some gas from Ricks pursuant to the settlement agreement and has remitted Oklahoma gross production and petroleum excise taxes on such gas as production was recouped. The Commission acknowledged that it was necessary to amend the proposed assessment to account for the amount of taxes paid by Arkla on any recouped gas and to recompute the amount of interest on the alleged deficiency to the date of payment.

5. In *Exxon,* the purchaser was sued by the producer for allegedly failing to comply with a take-or-pay provision. The purchaser made a one-time, nonrecoupable nonrefundable cash payment to settle the lawsuits. It was not a payment for future gas purchases and it did not terminate the existing gas purchase contract. The Oklahoma Tax Commission assessed gross production taxes against the settlement. The purchaser claimed the entire settlement was interest on the

■ Arkla maintains the record contains *uncontroverted* evidence that the recoupable, refundable prepayment it made to Ricks was not a "take-or-pay" payment but was actually made as consideration for substantial contract reformation unrelated to any take-or-pay obligations and for future gas. The ALJ relied upon the *language of the contract* as evidence of the nature of the prepayment. Although Arkla presented the testimony of its employees that the prepayment was made to secure contract reformation and was not made for Arkla's failure or refusal to take gas, Commission did present evidence which controverted this assertion: the language of the settlement agreement and related documents. This is the best evidence of the taxability of the settlement proceeds.[6] Accordingly, Arkla's contention the prepayment was not taxable as shown by *uncontroverted* evidence, is without merit.

The ALJ determined the prepayment was made to Ricks as a result of Arkla's failure or refusal to take gas pursuant to the quantities provisions of the parties' gas purchase contract. He based his determination on the preamble of the settlement agreement which references the controversy and litigation concerning Arkla's obligations under the quantities provisions, on the portion of the settlement agreement wherein Ricks waived any and all take-or-pay claims against Arkla, and on the paragraph of the settlement agreement wherein Arkla is afforded the right to recoup the total amount of the prepayment through gas takes. The amount of the prepayment from Arkla to Ricks is the exact amount of the total of all of the "take or pay values" listed in Exhibit A to the settlement, denominated the "Arkla Take or Pay Settlement".

The fact that Arkla never agreed that any take-or-pay deficiency existed or that no court had determined a take-or-pay deficiency had existed, does not change the nature of the prepayment for tax purposes. Commission was not required, as Arkla asserts, to determine the legitimacy of Ricks' underlying take-or-pay lawsuit against Arkla. If the producer was seeking payment of take-or-pay deficiencies, a payment to settle that claim is taxable to the same extent as if the deficiencies had been paid as required by the gas purchase contract.[7] The fact that the payment was for future production does not negate the fact that the payment was made to settle take-or-pay deficiency claims. Under the gas purchase contract, payments for take-or-pay deficiencies can be recouped in future gas production. There is substantial evidence in the record from which the Commission could conclude the prepayment made by Arkla to Ricks was a "take-or-pay settlement" and not simply to secure future production.

Nor has Arkla demonstrated the settlement payment to Ricks falls outside the scope of § 1009(g) because the prepayment, or part of it, might be *refunded* by the producer if the purchaser does not recoup all the payment with gas. The last sentence of § 1009(g) provides: "If said gas, which corresponds to such payments, is not taken but payments therefore are retained by the producer, then said payments are hereby deemed to be a premium on gas which was taken under said contract or agreement". Thus, the payment is not deemed a "premium" on gas taken unless the producer *retains* the payment. The statute does not exclude potentially-refundable, recoupable take-or-pay settlement payments from the operation of the statute. In *Exxon*, this

---

deficiencies and therefore, not taxable. The Commission disagreed and this Court affirmed.

6. In *Exxon*, the producer presented a witness who testified the settlement payment represented interest even though in its accounts it was not booked to an interest account. The settlement contract itself did not mention any part of the payment was for interest the producer lost. The Court held the evidence submitted by the producer and purchaser did not overcome the evidence established by the settlement agreement and the nature of the original lawsuit.

7. Whether a claim is resolved through litigation or settlement, its taxability is controlled by the nature of the underlying action. The nature of the litigation is controlled by the origin and character of the claim which gave rise to the litigation. *Exxon Corporation v. Oklahoma Tax Commission*, 873 P.2d 306, 309 (Okla.App.1993). There is nothing in the record to indicate Ricks sought damages on the underlying claim for anything other than the alleged take-or-pay deficiencies.

Court held that if the producer *refunds* to the purchaser the prepayment for gas not taken, the purchaser would be entitled to a refund of the taxes on the refunded amount if a timely claim is filed. *Exxon,* 873 P.2d at 309.

An administrator of the Gross Production Tax Section of the Tax Commission testified a purchaser/taxpayer who had paid potentially refundable recoupable take-or-pay monies to a producer could file a "protective letter" requesting a refund with the Commission if the unrecouped take-or-pay monies might be refunded to the purchaser outside the three-year statute of limitations period of 68 O.S. 1991, § 227. Commission cites O.T.C. Precedential Order No. 92–11–24–008 (dated 11/24/92) which held the 3–year limitations period applies to refundable/recoupable payments even though a refund might not be made under the agreement until after the 3–year limitations period has expired. In these cases, according to this Order, the taxpayer should file a "protective refund claim" with the taxing authority even though the amount of the refund remains unascertainable until the end of the recoupment period.

■ Arkla maintains that the Commission erred by failing to make an allocation of the prepayment between the value of contract reformation, the value of the gas to be delivered "free of charge", the value of the alleged deficiency claim and any interest claim. In support, Arkla directs our attention to O.T.C. Precedential Order No. 89–09–28–009, O.T.C. Order 89–12–05–25 and O.T.C. Order 93–08–12–011.[8] The Commission refused to make such an allocation because neither the settlement agreement nor the parties so designated any portion of the prepayment to these categories and because the entire amount of the prepayment may be recouped in gas. The Commission further found although Arkla submitted a summary schedule setting forth a methodology to support an allocation, it failed to present any evidence to substantiate the basis of the methodology or its argument.

The orders cited by Arkla on this issue can be distinguished on their facts from this appeal. All three orders involved *nonrecoupable* payments which were made to support contract *termination.* In Precedential Order No. 89–09–28–009, which involved a nonrecoupable payment and a recoupable payment, the parties' agreement *specifically provided* that certain parts of the nonrecoupable payment represented interest on the contract price deficiency claim, interest on the amount paid in satisfaction of the take-or-pay deficiency claim, and consideration for the termination of the contracts and the substitution of a new single contract. The Commission determined these amounts were not subject to the gross production tax. In Order No. 89–12–05–25 (dated 12/05/89), a nonrecoupable settlement payment was deemed a nontaxable termination payment because the evidence showed the payment did not bear any relationship to the take-or-pay clause of the gas purchase contract, to past or future production and that there were no accrued deficiencies. In Order No. 93–08–12–011, the settlement agreement contained an allocation statement which specifically identified part of the total settlement was to settle take-or-pay deficiencies and part was for contract termination. The business tax division of Commission assessed taxes on the entire amount. The purchaser protested and Commission sustained the protest. Commission found the allocation provided for in the settlement was sustained by the evidence and "properly reflected the economic reality of the settlement transaction". Thus, taxes were assessed on the payment related to the take-or-pay claims only.

In the instant appeal, the settlement agreement provides that the entire amount of the prepayment ($4,589,792.86) "represents prepayment for certain volumes of natural gas from the wells" and corresponds to the total amount of the "take-or-pay values" as listed on Exhibit A to the settlement. Thus, every bit of the consideration can be recovered by Arkla in gas. There is no allocation of the prepayment in the settlement agreement between recoupable gas and any other

---

**8.** Under 68 O.S.1991, § 221(g), the Oklahoma Tax Commission may publish those orders it deems to be of precedential value.

nonrecoupable item. Although Arkla submitted summary schedules at the hearing to support its requested allocation of the prepayment between the deficiency claim, interest and "reformation benefit to Arkla", there is no evidence, as there was in Order No. 89–09–28–009, that the parties to the settlement agreement associated the prepayment with anything other than gas which was required to have been taken or paid for whether or not taken. Commission is not required to allocate a prepayment under a settlement agreement based on how one of the parties to the agreement believes the prepayment *could have been* allocated. Although the gas purchase contract was amended in several respects by the amended gas purchase contract, the settlement agreement does not provide that any portion of the prepayment relates to contract reformation or interest on the take-or-pay deficiency. An allocation of a prepayment may be appropriate in a given case. The Commission's determination that an allocation is not required in this appeal is supported by substantial evidence.

■ Arkla maintains the assessment violates the substantive due process and equal protection guarantees of the 14th Amendment to the United States Constitution.[9] Specifically, it argues Section 1009(g) is arbitrary and unreasonable because it creates a fiction by deeming gas taken under the contract to have an added value (the settlement payment) which is in excess of the true value of the gas. In *Exxon Corporation v. Oklahoma Tax Commission*, 873 P.2d 306 (Okla. App.1993), this Court decided this issue adversely to Arkla: "A producer who has received a take-or-pay payment is not so similarly situated to a producer who has received a prepayment under a prepayment provision in a gas purchase contract as to require equal taxation treatment."

"The Constitution does not prohibit reasonable classifications for taxation so long as they rest on a difference having a reasonable relation to the subject of legislation to the end that all persons similarly situated are treated alike. Classifications not manifestly arbitrary or unreasonable are not constitutionally infirm. An invalid classification is that which discriminates between persons or property in like situations, or which is arbitrary, illusory or one that has no fair or substantial relation to the purpose for which it is made. A tax imposed on the basis of an assumed fact which the taxpayer is not allowed to controvert is, of course, arbitrary and unreasonable." *Suglove v. Oklahoma Tax Commission*, 605 P.2d 1315, 1320–1321 (Okla.1979).

The gross production tax is not a property tax. It is a tax "in lieu of" property taxes by the State and its subdivisions and is levied on the occupation or business of producing oil and gas. *Apache Gas Products Corporation v. Oklahoma Tax Commission*, 509 P.2d 109, 114 (Okla.1973). The "standard adopted for the determination of its amount is the value of the gross production of the commodity taxed." *Apache*, at 114. The Legislature has declared, through § 1009(g), that the taxable value of gas includes payments that a producer actually receives for the purchaser's failure to take gas. Thus, the tax is based upon what the producer receives under his contract and applies to all producers similarly situated. Section 1009(g) does not, as Arkla asserts, presume a false fact which the taxpayer is not permitted to controvert. Arkla and other purchasers are provided the opportunity to show a prepayment does not relate to a take-or-pay deficiency claim. If Arkla had been able to show the prepayment did not relate to its alleged failure or refusal to take gas, then § 1009(g) would not apply. The evidence shows the prepayment was made in settlement of take-or-pay claims and therefore, for any part of the prepayment not recouped in gas but retained by Ricks, the payment will be deemed a "premium" under the contract. Arkla has failed to demonstrate this scheme is an unreasonable, arbitrary classification which requires us to declare it unconstitutional.

Without § 1009(g), take-or-pay payments which are recoupable from future production would be included in the gross value of gas at

9. The ALJ refused to address Arkla's constitutional arguments, noting the Commission, as an administrative agency, is not empowered to decide the constitutional validity of a taxing statute. *Dow Jones & Company, Inc. v. Oklahoma Tax Commission*, 787 P.2d 843 (Okla.1990).

the time of production. 68 O.S.1991, § 1009(b). Under § 1009(g), gross production taxes on a recoupable payment must be paid at the time of the take-or-pay payment. If gas is later recouped, the prior payment corresponds to such recouped gas and the purchaser shall report this gas to the Tax Commission as gas on which said tax has been paid. § 1009(g). Thus, the subsection simply changes the time when gross production taxes are paid for recouped payments. By requiring the tax to be paid at the time the recoupable payment is made, the Legislature insures that the State obtains the tax on the gross value of the gas, which includes the time use value of the payment. If the payment is not recouped in gas and the producer retains any part of the payment, then that part of the retained payment is deemed part of the "gross value" (a "premium") of gas taken under the contract or agreement. § 1009(g). The tax (7%) is based on what the producer receives under his contract, i.e. the "gross value". 68 O.S.1991, § 1001(b). This includes monies paid in settlement of take-or-pay deficiencies which correspond to gas which was required to be taken and paid for or paid for whether or not taken. The tax never exceeds 7% of the gross proceeds realized by the producer under the gas purchase contract. Accordingly, the tax is not unconstitutional because it is "confiscatory".[10]

 Arkla next maintains the proposed assessment violates the "uniformity requirement" of Art. 10, § 5 of the Oklahoma Constitution. This constitutional section provides:

> The power of taxation shall never be surrendered, suspended, or contracted away. Taxes shall be uniform upon the same class of subjects.

Arkla argues Section 1009(g) violates this provision because it deems gas from a well on which a settlement payment has been made to have a higher value than gas from a well where no settlement payment is made.

The uniformity provision of Article 10, Section 5 relates to the *rate* of taxation. *Continental Oil Company v. Oklahoma State Board of Equalization,* 570 P.2d 315 (Okla. 1976). Further, it applies to *property* taxes only. *In the Matter of Income Tax Protest of Flint Resources,* 780 P.2d 665 (Okla.1989). As noted above, the Oklahoma Supreme Court in *Apache,* supra, determined the gross production tax is not a property tax, but a tax levied on the occupation or business of gas production and is based on the value of the gross production. Section 1009(g) is not a property tax and does not provide for different rates of taxation. The fact that § 1009(g) provides that take-or-pay payments shall be included in and deemed a part of the value of all gas taken under the contract, does not render it unconstitutional as violative of Art. 10, § 5. In Article 10, § 22 of the Oklahoma Constitution, "Nothing in this Constitution shall be held, or construed, to prevent the classification of property for purposes of taxation; and the valuation of different classes by different means or methods." This assignment of error is overruled.

 Arkla argues § 1009(g) is a "special law" in violation of Article V, sec. 59 of the Oklahoma Constitution.[11] Arkla cites no authority, other than this provision of the Oklahoma Constitution, to support its argument that the entire Gross Production Tax Code, 68 O.S.1991, §§ 1001–1024, is a general law and that § 1009(g) thereof, is an impermissible special law. We refuse to consider assignments of error, unsupported by convincing argument or authority, unless it is apparent, without further research, that they are well taken. *James v. State Farm Mutual Automobile Insurance Company,* 810 P.2d 365, 371 (Okla.1991). Legislative acts are presumed constitutional and will be upheld unless clearly, palpably and plainly

---

10. A state taxing statute violates due process only if it is so arbitrary as to compel the conclusion that the act does not involve exertion of the taxing power, but is in substance and effect, a direct exertion of a different and forbidden power, such as confiscation of property. *A. Magnano Co. v. Hamilton,* 292 U.S. 40, 42–45, 54 S.Ct. 599, 601, 78 L.Ed. 1109 (1934).

11. Article 5, Sec. 59 of the Oklahoma Constitution provides: "Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted."

inconsistent with the Constitution. *Kimery v. Public Service Company of Oklahoma,* 622 P.2d 1066 (Okla.1980). Arkla has failed to preserve this issue for our review.

Having determined that Commission properly assessed gross production taxes on the settlement payment to Ricks, we conclude the assessment of petroleum excise taxes under 68 O.S.1991, § 1102 is also proper. As the ALJ noted, petroleum excise tax is levied in addition to gross production tax on all gas which is subject to the gross production tax.

■ Finally, Arkla contends that even if the proposed assessment is not erroneous, Commission should waive the penalty and interest portion of the assessment under 68 O.S.1991, § 220(a). That subsection provides:

> (A) The interest or penalty or any portion thereof ordinarily accruing by reason of a taxpayer's failure to file a report or return or failure to file a report or return in the correct form as required by any state tax law or by this Code or to pay a state tax within the statutory period allowed for its payment may be waived or remitted by the Tax Commission provided the taxpayer's failure to file a report or return or to pay the tax is satisfactorily explained to the Tax Commission, or provided such failure has resulted from a mistake by the taxpayer of either the law or the facts subjecting him to such tax, or inability to pay such interest or penalty resulting from insolvency. * * * *

Arkla wants the interest and penalties waived because its failure to pay the taxes was based on a genuine and good faith belief that the prepayment was not subject to severance taxes. It argues Commission had not issued any rules or pronouncements regarding 68 O.S.1991, § 1009(g) until the December, 1994, orders in this assessment. The ALJ stated the discretionary authority to waive penalty and interest was within the Commission's exclusive power and therefore did not address this issue in its findings of fact and conclusions of law.

As stated in *Exxon Corporation v. Oklahoma Tax Commission,* 873 P.2d 306, 310 (Okla.App.1994), the mere fact a statute exists allowing remittitur of penalty and interest does not require Commission to waive it. *Wal–Mart Stores, Inc. v. Oklahoma Tax Commission,* 817 P.2d 1281 (Okla.App.1991). Under 68 O.S.1991, § 220, waiver of interest and penalty is discretionary with the Commission. *Exxon,* supra. We will not order a remittitur of the interest and penalty unless an abuse of discretion is shown. *Id.*

In its hearing brief, Arkla argued waiver is appropriate because Commission did not provide purchasers with guidance or provided incorrect guidance regarding the applicability of § 1009(g) to settlement payments. There is no evidence in the record that Arkla sought any guidance from Commission or received any incorrect advice from Commission. Although there do not appear to be any Rules promulgated by Commission regarding § 1009(g) to settlement payments, in two 1989 orders of the Commission, Order No. 89–12–05–25 and Precedential Order No. 89–09–28–009 which was the subject of a 1990 law review article, the applicability of § 1009(g) to settlement payments was directly addressed. Still, Arkla did not tender any gross production or excise taxes under protest on the prepayments. In both of the 1989 orders, the taxpayers paid the taxes first and requested a refund. Arkla could have done the same. Furthermore, the settlement agreement provides that Ricks agreed to bear and pay the taxes, if any, that may become due with respect to the prepayment. The parties clearly contemplated the possibility that the prepayment might be taxable.

The taxes included in the assessment were due in June, 1988. The assessment was issued in February, 1989, after an audit of Arkla's records. In June, 1989, Arkla protested the assessment. The Commission's order which adopted the ALJ's findings was issued in December, 1994. Although 5½ years passed from the time of the assessment, part of this was due to Commission's disposition of Arkla's motions for reconsideration and for en banc hearings in the thirty-six related cases. Under the facts of this appeal, we cannot say Commission abused its discretion in denying Arkla's request to waive the penalties and interest on the assessment.

Accordingly, the order of the Oklahoma Tax Commission is AFFIRMED.

ADAMS and HANSEN, JJ., concur.