**In the Matter of SALES TAX CLAIM FOR REFUND OF SOUTHERN HILLS COUNTRY CLUB.**

**SOUTHERN HILLS COUNTRY CLUB, Appellant,**

**v.**

**OKLAHOMA TAX COMMISSION, Appellee.**

**No. 75185.**

Court of Appeals of Oklahoma, Division No. 3.

Oct. 1, 1991.

Rehearing Denied Nov. 5, 1991.

Certiorari Denied April 28, 1992.

John B. Turner and Susan Stidham Brandon, Tulsa, for appellant.

Joe Mark Elkouri and Christy J. Caeser, Oklahoma City, for appellee.

## OPINION

HUNTER, Chief Judge:

Southern Hills Country Club is a country club located in Tulsa. Southern Hills appeals from the Oklahoma Tax Commission's order assessing sales tax on certain transactions involving Southern Hills and its members. Southern Hills has paid sales taxes on all of the contested transactions since July, 1985. The parties agree that this appeal will determine whether Southern Hills will pay sales tax on the contested transactions to the date of final disposition of this case.

The contested transactions fall into two broad categories: (1) stock transfer and initiation fees, and (2) service charges on beverage and meals sales.

Under category (1) there are several subcategories. Southern Hills sells stock to stockholding members, called "Proprietary Members," for $30,000. Southern Hills attributes half the $30,000 the new member pays to the member's purchase of his stock; the other half is a transfer fee. In addition to stockholder members there are several non-stockholding categories of membership. Southern Hills limits other membership categories to former Proprietary Members and a few others, each of which is severely limited in number.[1] Non-stockholding members pay initiation fees,

upon which the Commission has assessed sales tax.

Category (2) relates to a 20% service charge that Southern Hills imposes on food and beverage sales. Southern Hills pays only 8½% of its total service charges for food and drink to its service employees. It retains the other 11½%.

Since July, 1985, the Commission has charged and Southern Hills has paid, under protest, sales taxes on all of the foregoing kinds of transactions.

## ISSUE

Broadly speaking there is but one issue in this case: must Southern Hills pay the sales tax assessed by the Commission? Under this broad head, we must determine upon how many, if any, of the following classes of receipts Southern Hills owes sales tax:

(1) The $15,000 it receives from each new Proprietary Member for his stock?

(2) The $15,000 stock transfer fee it charges new Proprietary Members.

(3) Fees it charges to non-shareholding members.

(4) The 20% service charge it adds to charges for food and beverage sales.

## DISCUSSION

In July, 1985, the Commission issued a comprehensive order describing in detail the categories of transactions upon which country clubs, restaurants, and other similar businesses must pay sales tax. The Commission formally notified Southern Hills and other country clubs of the country club order's terms. The Commission entered the country club order for the purpose of "stating and clarifying" its policies and rules. The clarifications made concerned whether sales taxes were payable on various transactions engaged in by country clubs and other similar enterprises.

---

1. Those categories are: (1) Senior members, that is Proprietary Members over the age of 65; (2) Non-resident members, that is members living more than a specified number of miles from Southern Hills; (3) Widow and widower members, that is spouses of deceased Proprietary Members; (4) Other members who acquired non-proprietary membership rights under membership categories Southern Hills has since eliminated or who qualified for membership under certain other categories. The largest number of members allowed under any of the other categories is 10.

The country club order covers each category of transaction at issue here. Thus, if we find the country club order valid and enforceable, the Commission's sales tax assessments at issue here are also valid.

The country club order includes a finding that the Sales Tax Division was assessing sales tax against country clubs in a non-uniform way. Some country clubs were paying sales taxes on the transactions discussed here, others were not.

The country club order provided that sales taxes were payable on "stock purchase, ... service charges [with certain exceptions], initiation fees, [and] stock transfer fees." In it, the Commission relied on several sections of the Oklahoma Sales Tax Code, 68 O.S. §§ 1350, et seq.[2]

## I.

■ Southern Hills points out that in 1973 the Commission informed Southern Hills that Southern Hills would not be liable for sales tax on stock sales and transfer fees. In 1987 the Commission, amid much confusion, rescinded an assessment of sales tax on Southern Hills's stock sales and transfer fees for the years 1981 through 1984. Southern Hills also relies on a Commission order relieving Cedar Ridge Country Club, in Tulsa, of sales tax liability in the same area.

Southern Hills claimed in the Commission, and reasserts here, that these actions of the Commission showed a longstanding interpretation of the Sales Tax Code, and the Commission may not now change its interpretation. We disagree.

The Commission assessed no sales taxes in this case until after Southern Hills received notice of the country club order. In the years before 1985, Southern Hills was the happy beneficiary of the Commission's

---

**2.** The sections of the Sales Tax Code relied on by the Commission in the country club order are:

§ 1352(L). "Sale" means the transfer of either title or possession of tangible personal property for a valuable consideration regardless of the manner ... by which the transfer is accomplished.

§ 1354.

1. There is hereby levied upon all sales ... an excise tax ... [on] the gross receipts or gross proceeds of each sale of the following:

(A) Tangible personal property ...

. . . . .

(K) Dues or fees to clubs including free or complimentary dues or fees which shall have the value equivalent to the charge that would have otherwise been made, including any fees paid for the use of facilities or services rendered at a health spa or similar facility or business;

. . . . .

(M) Charges made for the privilege of entering or engaging in any kind of activity, such as tennis, racquetball, or handball, when spectators are charged no admission fee;

(N) Charges made for the privilege of using items for amusement, sports, entertainment or recreational activity, such as trampolines or golf carts;

(O) The rental of equipment for amusement, sports, entertainment or other recreational activities, such as bowling shoe, skates, golf cart, or other sports or athletic equipment;

§ 1352(F). "Gross receipts" or "gross proceeds" shall mean the total amount of consideration for the sale of any tangible personal property or service taxable under this article, whether the consideration is in money or otherwise. "Gross receipts" or "gross proceeds" shall include, but not be limited to:

(1) Cash paid, and

(2) Any amount for which payment is charged, deferred or otherwise to be made in the future, regardless of the time or manner of payment, and

(3) Any amount for which credit or a discount is allowed by the vendor,

(4) Any amount of deposit paid for transfer of possession, and

(5) Any value of a trade-in or other property accepted by the vendor as consideration.

There shall not be any deduction from the gross receipts or gross proceeds on account of cost of the property sold, labor service performed, interest paid, or losses, or of any expenses whatsoever, whether or not the tangible personal property sold was produced, constructed, fabricated, processed, or otherwise assembled for or at the request of the consumer as part of the sale.

§ 1362(C). Each person required pursuant to the provisions of the Oklahoma Sales Tax Code to make a sales tax report shall include in the gross proceeds derived from sales to consumers or users, the sales value of all tangible personal property which has been purchased for resale, manufacturing, or further processing, and withdrawn from stock in trade for use or consumption during the taxable period covered by such report and shall pay the tax on the sales value of this tangible personal property withdrawn from stock in trade for consumption or use.

admittedly confused and *inconsistent* policy. Cedar Ridge benefitted only because its founding members, and many of its employees came from Southern Hills. The Commission held for Cedar Ridge because its close identification with Southern Hills convinced the Commission to treat it in the same way as Southern Hills. Those taxpayers who paid sales taxes of the kind Southern Hills and Cedar Ridge avoided were less fortunate. The Commission entered its country club order because of the need for clarification of its policies evidenced by that confusion and inconsistency.

■ The policies expressed in the Commission's country club order have been in force for more than five years. The Legislature has amended the Sales Tax Code during nearly every legislative session since then, but has not changed the substance of the sections the Commission relied on in its country club order. When the Legislature reenacts statutes that an administrative body, such as the Commission, has construed, the reenactment is deemed an adoption by the Legislature of that construction. *Peterson v. Oklahoma Tax Commission,* 395 P.2d 388 (Okl.1964).

Southern Hills relies on *Oral Roberts University v. Oklahoma Tax Commission,* 714 P.2d 1013 (Okl.1985). We find, however, that *Oral Roberts* does not apply to the facts in the record before us. There, the Supreme Court reversed the Commission for having changed a longstanding policy of exempting church run educational institutions from sales taxation. That case is unlike this one in that here the Commission, in its country club order, did not depart from a *consistent* interpretation of the Sales Tax Code. Instead, the purpose of the country club order was to announce a consistent policy where one did not previously exist.

## II.

Southern Hills presents three more arguments in support of its position that stock purchase and stock transfer fees should not be subject to sales tax. It first contends that the stock is intangible personal property. Southern Hills next contends that the sale and transfer of stock are an investment in and a payment for ownership interest in the corporation. Finally it says the Commission should be barred by estoppel from enforcing the sales tax assessment. We reject these contentions.

■ In its country club order, the Commission expressly made taxable both receipts from stock sales and transfer fees. In so doing, the Commission relied on a similar holding of the Wisconsin Department of Revenue. The Commission found the applicable Wisconsin statute similar to § 1354(1)(K). The Commission's rationale for assessing sales tax on these transactions is that payment for the stock and payment of the transfer fee are prerequisites to use of Southern Hills's facilities. The Commission concluded that § 1354(1)(K) applies under these circumstances. § 1354(1)(K) imposes a sales tax on all payments which are equivalent to a fee paid "for the use of facilities or services rendered." We find that the Legislature has adopted this interpretation because of its reenactment of § 1354(1)(K) without change on five separate occasions.[3]

■ The Commission's recision of the pre-1985 taxes did not harm Southern Hills. There was no detriment in Southern Hills's reliance on the pre-1985 orders. There was only benefit. The Commission was not estopped to assess sales taxes for later years. The fact that a taxing authority sees fit not to assess taxes on particular kinds of transactions for a number of years does not estop it from later concluding that such transactions are taxable under relevant statutes. *Illinois Power Co. v. Mahin,* 49 Ill.App.3d 713, 7 Ill.Dec. 436, 364 N.E.2d 597 (1977), affirmed 72 Ill.2d 189, 21 Ill.Dec. 144, 381 N.E.2d 222 (1978).

## III.

■ Southern Hills's final contention is that the 20% service charges it adds to its

---

**3.** The Legislature amended § 1354 on five occasions after the country club order was entered: Laws 1987, c. 113 § 16; Laws 1988, c. 142 § 1; Laws 1988 c. 192 § 1; First Executive Session 1989, c. 2 § 101; and Laws 1990 c.280 § 1. § 1354(1)(K) is unchanged.

bills for food and drink should be exempt from sales tax. We reject this contention because the country club order expressly makes taxable all such service charges unless they are segregated and paid to service employees in their entirety. If only a portion is paid to employees, then the entire amount of the service charge is subject to sales tax. Southern Hills admits that it remits only a portion of its 20% service charge to service employees. Those service charges are, therefore, subject to sales tax in their entirety.

AFFIRMED.

JONES, J., concurs.

HANSEN, P.J., dissents.