**EL PASO NATURAL GAS COMPANY and Anson Company, Appellants,**

**v.**

**OKLAHOMA TAX COMMISSION, Appellee.**

No. 85433.

Court of Appeals of Oklahoma,
Division No. 4.

June 4, 1996.

Rehearing Denied July 2, 1996.

Certiorari Denied Nov. 19, 1996.

Julian P. Kornfeld, Kornfeld Franklin Renegar & Randall, Oklahoma City, for Appellant Anson Company.

Richard B. Kells, John F. Fischer, Andrews Davis Legg Bixler Milsten & Price, Oklahoma City, for Appellant El Paso Natural Gas Company.

Gregory K. Frizzell, General Counsel, Kathryn Bass, Assistant General Counsel, Oklahoma Tax Commission, Oklahoma City, for Appellee.

## OPINION

TAYLOR, Presiding Judge.

This is an appeal from an order by the Oklahoma Tax Commission (OTC) denying a tax protest of El Paso Natural Gas Company (El Paso) and Anson Company (Anson). Based upon the record and applicable law, we affirm.

## I. FACTS

Anson, a gas producer, and El Paso, a gas purchaser, entered into gas purchase contracts in the early 1980's. A dispute arose over whether El Paso had breached the take-or-pay provisions of the contracts. Take-or-pay provisions obligate a gas purchaser to take certain quantities of gas or pay for them, even if not taken. The parties settled their dispute in an agreement whereby El Paso paid Anson $12,000,000. The settlement provided this amount was nonrecoupable and nonrefundable.

On October 7, 1988, El Paso timely filed its Gross Production Monthly Tax Report (Report) with OTC for the leases included in the settlement. El Paso did not report the $12,000,000 paid pursuant to the settlement, though the Report's instructions required reporting for "Payment of take or pay."

On October 11, 1991, following an audit by its Business Tax Division, OTC mailed a proposed assessment of gross production and petroleum excise taxes against El Paso. Its revised proposed assessment stated $4,206,000 of the settlement paid by El Paso was subject to tax, penalties, and interest in the amount of $555,000. Gross production tax is calculated on gross value, and take-or-pay payments are deemed to be part of gross value. *See* 68 O.S.Supp.1995 § 1009(g).

Both El Paso and Anson timely filed protests to the proposed assessment. The parties stipulated Anson is a party to the protest because a portion of the tax due would be borne by Anson.

Following a hearing, an OTC administrative law judge (ALJ) made findings of fact and conclusions of law, and recommended the tax protest be denied. OTC's Commissioners adopted the ALJ's findings, conclusions, and recommendations. El Paso and Anson appeal OTC's order denying the tax protest.

■ In reviewing an order by OTC, we will not reverse where that order is supported by substantial evidence and is free from legal error. *See Dugger v. State ex rel. Oklahoma Tax Comm'n,* 834 P.2d 964 (Okla. 1992); *Enterprise School Photos, Inc. v.*

*Oklahoma Tax Comm'n,* 898 P.2d 187 (Okla. Ct.App.1995).

## II. STATUTE OF LIMITATIONS

El Paso and Anson assert OTC erred in failing to find the assessment was time-barred by the applicable statute of limitations. It is undisputed El Paso timely filed the Report on October 7, 1988. OTC states the Report was required to be filed by October 10, 1988. OTC mailed the proposed assessment October 11, 1991, or more than three years later. The applicable statute of limitations, found in 68 O.S.1991 § 223(a), states that, with exceptions, no tax assessment shall be made after the expiration of three years from the date the return was required to be filed or the date the return was filed, whichever period expires later. The exceptions to section 223 are found in (b), which has no application here, and in (c), which states:

> In the case of either a false or a fraudulent report or return, or *failure to file a report or return,* as required under any state tax law, the Tax Commission is authorized to compute, determine and assess the estimated amount of tax due from any information in its possession, or a proceeding in Court may be begun for the collection of such tax without assessment *at any time.* (Emphasis added).

Under section 223(a), OTC's assessment would be barred by the three-year statute of limitations. However, the ALJ concluded El Paso failed to file a return for purposes of section 223, triggering subsection (c); and further concluded El Paso had an obligation to make such a filing, even in the absence of OTC-adopted rules and regulations.

 We have examined the record to determine whether there was a "failure to file a report or return" for purposes of section 223(c). We determine there was such a failure. El Paso did file a Gross Production Monthly Tax Report. Space 7B on the report form is labeled "Type of Report." The report's accompanying instructions state:

[7.] B. Type of report.

Code 1. Current report.

· · · · ·

4. Payment of take or pay.

On Space 7B, El Paso filled in a "1," indicating it was filing a current report. It failed, however, to file the additional report, the one that should have been coded "4" for payment of take-or-pay. Instruction 7B lists six different types of reports. The instructions indicate there will be times when taxpayers will be required to file more than one type of report per month for each lease. This was the case here. In other words, El Paso filed a report, but did not file the separate report required by the statute.

 Statutes of limitation are designed to prevent undue delay in bringing suit on claims, and to require claims be advanced while the evidence to rebut them is still fresh. 51 Am.Jur.2d *Limitation of Actions* § 17 (1970). Limitations statutes barring the collection of taxes otherwise due and unpaid are strictly construed in favor of the government. *Bufferd v. Commissioner of Internal Revenue,* 506 U.S. 523, 113 S.Ct. 927, 122 L.Ed.2d 306 (1993). Because our taxation system depends in large part on information supplied by the taxpayer, the legislature has placed no limitations period in cases where the required report or return is not submitted. Therefore, we believe the ALJ correctly concluded El Paso failed to file a report for purposes of the statute of limitations.

 The question next becomes, under section 223(c), whether this additional report was "required under any state law." An examination of Title 68 reveals section 1009(g) makes take-or-pay payments taxable, and section 1010 requires those persons having to pay such taxes to file monthly reports "on forms prescribed by the Tax Commission" giving certain information and "other information required." El Paso does not deny it was aware information about take-or-pay was required to be included on a report or that the instructions so indicated. OTC carried out the legislative directive by supplying a tax form to reflect the law. Thus, it can be said the report was required by state law. Additionally, it is well-known that an appellate court will not assume the legisla-

ture has done a vain or useless act; rather, we will interpret legislation to give effect to every word and sentence rather than rendering some provisions nugatory. *Globe Life and Accident Ins. Co. v. Oklahoma Tax Comm'n*, 913 P.2d 1322 (Okla.1996).

■ Furthermore, section 1009(g) was enacted by the Legislature in 1983. That same year, OTC issued a notice to all gas production taxpayers advising them of the new law. The legislature has reenacted sections 1009 and 1010 several times since then. "When the Legislature reenacts statutes that an administrative body, such as the [Tax] Commission, has construed, the reenactment is deemed an adoption by the Legislature of that construction." *Matter of Sales Tax Claim for Refund of Southern Hills Country Club*, 830 P.2d 196, 199 (Okla.Ct.App.1991). We conclude section 223(c) applies and, therefore, OTC's proposed assessment was not time-barred.

## III. SECTION 1009(g)

■ El Paso and Anson next argue the settlement payments are not taxable under section 1009(g). We considered this issue in *Exxon Corp. v. Oklahoma Tax Commission*, 873 P.2d 306 (Okla.Ct.App.1993). There we held section 1009(g), which taxes take-or-pay payments made by a purchaser to a producer for the failure to take gas, applies to nonrecoupable, nonrefundable payments made to settle take-or-pay disputes. The ALJ correctly applied *Exxon* and section 1009(g) in this respect.

## IV. ALLOCATION

El Paso and Anson next attack the formula used by OTC to arrive at the $4,206,000 figure allocated as subject to tax. OTC labelled this amount as "past take-or-pay" and arrived at it through a methodology distinguishing between accrued deficiencies and the remaining term of the contracts. Briefly, OTC determined: (1) the total accrued take-or-pay deficiency and (2) the future value of the contracts. It then added the two figures together, apportioned (1) the total accrued take-or-pay deficiency to the total, and applied this percentage to the settlement figure. As to (2), the OTC has previously determined the future value of the contracts is not taxable.[1]

■ El Paso and Anson assert that to be valid, OTC should have adopted this methodology as a rule or regulation. "Rules" are actions in which the agency's legislative element predominates, while "orders" involve more of the judicial function and deal with a particular present situation. *State ex rel. Villines v. Freeman*, 370 P.2d 307, 310–11 (Okla.1962). The choice to proceed by general rulemaking or by individual ad hoc litigation lies primarily within the informed discretion of the agency. 2 Am. Jur.2d *Administrative Law*, § 155 (1994). While this discretion has limits, and while it is said rulemaking looks to the future and adjudication judges past events under present law, an agency can make pronouncements of future applicability when deciding an adjudicatory matter, as a trial court may announce what the common law is in deciding a case. *Id.* Ultimately, what counts is the character and the impact of the agency action. *Grand River Dam Auth. v. State*, 645 P.2d 1011, 1016 (Okla.1982).

Viewed from this perspective, we believe OTC's action was proper. The character of OTC's order is basically one of applying state law, which deems take-or-pay payments taxable. The impact of that decision, while it may apply to other taxpayers in the same situation, is to cause those taxpayers to report past take-or-pay payments, which is what the statute requires. Thus it can be said OTC's decision was interpretive and quasi-judicial, and properly done through its order.

---

1. Here, OTC used this methodology and El Paso's own calculations in the following manner:

 $ 8,279,270 take-or-pay deficiency
 + $15,341,144 future value of the contracts
 $23,620,414 potential total award

 $ 8,279,270 ÷ $23,620,414 = 35.05 percent apportionment

 $12,000,000 settlement
 × 35.05 percent
 $ 4,206,000 subject to taxes

■ El Paso and Anson rely on the following statement in *Fort Howard Paper Co. v. State ex rel. Oklahoma Tax Commission*, 792 P.2d 87, 90 (Okla.Ct.App.1989), citing *Oklahoma Tax Commission v. First National Bank & Trust Co. of Oklahoma City*, 178 Okla. 260, 62 P.2d 1220 (1936): "[T]he Commission may not apply an arbitrary formula fixing percentages of expenses to be allowed or disallowed without regard to the actual facts of the case."

■ However, the record reveals OTC based its figures on the actual facts of the case, using El Paso's own figures. As to the formula used here, "arbitrary" is defined as "fixed or done capriciously or at pleasure.... not done or acting according to reason or judgment." *Black's Law Dictionary* 96 (5th ed. 1979). We afford great deference to agency action and will not disturb the order unless it is arbitrary and capricious, that is, not founded on reason. *Metcalf v. Oklahoma Bd. of Medical Licensure and Supervision*, 848 P.2d 48, 50 (Okla. Ct.App.1992). We agree with the ALJ that the method used is a reasonable one for assigning value. As required by *Exxon*, 873 P.2d at 309, it is reflective of "the nature of the underlying action," which—whether a claim is resolved through litigation or settlement—controls its taxability.

■ El Paso and Anson next assert OTC should have used other calculations by El Paso in determining the take-or-pay deficiency. The ALJ held those calculations were artificially low. The evidence conflicts on this point. While OTC might have used other figures, our standard of review is substantial evidence—that which possesses something of substance and of relevant consequence that carries with it fitness to induce conviction. *Teleco, Inc. v. Corporation Comm'n*, 653 P.2d 209, 212 (Okla.1982). There was substantial evidence presented to support OTC's decision.

■ El Paso and Anson also assert OTC erred in failing to impute part of the settlement proceeds to interest, which indisputably is not taxable. As the ALJ found, the record fails to show any evidence to support the contention that any claim by Anson for interest was included in the settlement. El Paso does not dispute this finding in its briefs. Again, we find substantial evidence to support OTC's decision.

■ Finally, El Paso and Anson assert the ALJ erred in refusing to allow into evidence the prior testimony of an unavailable witness on this issue of allocation. The record reveals the witness resided out-of-state and was available to testify, but at a cost of $250 an hour. The ALJ refused to allow the prior testimony into evidence, finding the witness failed to fall within the category of an unavailable witness as defined in 12 O.S.1991 § 2804. Rulings of a trial court on the admissibility of evidence will not be disturbed in the absence of a strong showing of prejudice, or a breach of a fundamental right. Our standard of review in this area is abuse of discretion. *Madill Bank and Trust Co. v. Herrmann*, 738 P.2d 567, 571 (Okla.Ct. App.1987). El Paso and Anson have failed to make such a showing of abuse of discretion.

## V. PENALTIES AND INTEREST

■ Finally, El Paso and Anson assert OTC should have waived penalties and interest, which amount to almost half of the total assessment. The ALJ chose not to make a recommendation on this point. Title 68 O.S.Supp.1995 § 220, makes this issue discretionary with OTC, and its decision will not be reversed barring a showing of abuse of discretion. *Exxon*, 873 P.2d at 310. The record shows the taxes here were paid only after the OTC audit. Though El Paso and Anson claim "mistake of law," section 1009(g) and OTC's tax forms clearly required reporting of take-or-pay payments. We find no abuse of discretion here.

The decision of OTC denying the tax protest is AFFIRMED.

RAPP, C.J., and REIF, J., concur.