1999 OK 41

Charles S. NEER and Eileen
M. Neer, Appellants,

v.

STATE of Oklahoma ex rel. OKLAHOMA
TAX COMMISSION, Appellee.

No. 89,748.

Supreme Court of Oklahoma.

May 11, 1999.

As Corrected June 4, 1999.

Mark W. Curnutte and David E. Jones of Logan & Lowry, LLP, Vinita, Oklahoma for Appellants.

Thomas E. Kemp, Jr., General Counsel; Kathryn Bass, Deputy General Counsel; David L. Kinney, Assistant General Counsel; and Sean R. McFarland, Assistant General Counsel—all with Oklahoma Tax Commission, Oklahoma City, Oklahoma for Appellee.

LAVENDER, J.

¶1 This appeal presents the question: did appellee, the Oklahoma Tax Commission (OTC) properly deny a refund claim made in December 1995 by appellants, Charles Neer, M.D. and his spouse, Eileen Neer (taxpayers) to get back part of the Oklahoma income tax they paid in April 1992 for tax year 1991? The claim was grounded on the assertion that pursuant to 68 O.S.1991, § 2357(B)(1), as Oklahoma residents, they were entitled to receive a credit against their 1991 Oklahoma income tax liability for tax paid to the State of New York in September 1995 on the same 1991 retirement income upon which they paid

Oklahoma income tax.[1] A refund was denied by OTC based on 68 O.S. Supp.1997, § 2373, which, with certain exceptions, limits the amount of a refund to the portion of the Oklahoma income tax paid during the three years immediately preceding the date of filing the refund claim.[2]

¶2 We hold when none of the statutorily delineated exceptions apply, as none do here, § 2373 acts in a manner analogous to a statute of repose in that it acts as a substantive limitation on the right to recover any amount as a refund when the claim for refund is filed more than three years after the date on which Oklahoma income tax is paid. In other words, as applicable here, § 2373 is a legislatively crafted outer limit time boundary beyond which taxpayers' right to recover a refund no longer exists. Further, during the three year period specified in § 2373 taxpayers had available adequate avenues by which to protect their ability to obtain an Oklahoma income tax refund, but they failed to avail themselves of such avenues. Therefore, OTC correctly denied taxpayers' refund claim and the Court of Civil Appeals (COCA) properly affirmed that denial based on § 2373 because the claim was submitted more than three years after taxpayers paid their Oklahoma income tax in April 1992 for tax year 1991.

**PART I. STANDARD OF REVIEW.**

█ ¶3 When OTC, an administrative agency, acts in its adjudicative capacity—as it acted here—an order issued by it will be affirmed on appeal if (1) the record contains substantial evidence supporting the facts upon which the order is based and (2) the order is free of legal error. *See Dugger v. State of Oklahoma, ex rel. Oklahoma Tax Com'n*, 1992 OK 105, 834 P.2d 964, 968; *El Paso Natural Gas Co. v. Oklahoma Tax Com'n*, 1996 OK CIV APP 69, 929 P.2d 1002, 1005. In that the parties stipulated to the basic facts, it is unnecessary to conduct a substantial evidence inquiry. The central question is legal and involves deciding whether OTC, in denying a refund, properly interpreted and applied relevant statutory law to the stipulated facts.

**PART II. FACTUAL AND PROCEDURAL BACKGROUND.[3]**

¶4 Appellants have been full time residents of Oklahoma since moving to Vinita in 1990. For many years prior thereto Dr. Neer practiced medicine, primarily in New York, New York, through an Internal Revenue Service § 1362(a)(1) subchapter S corporation [26 U.S.C.A. § 1362 (West 1988), as amended], a State of New York professional corporation (corporation), not domesticated in Oklahoma.[4] During his years living and

---

1. 68 O.S.1991, § 2357(B)(1) was substantially amended by the Oklahoma Legislature in 1996 [1996 Okla. Sess. Laws, Ch. 289, § 8 (West)—effective July 1, 1996] **to disallow any credit** against Oklahoma income tax for tax paid to another state by an Oklahoma resident individual with respect to any income specified in 4 U.S.C.A. § 114 (West 1997) upon which a nonresidential state is prohibited from imposing an income tax. Section 114, a federal statute enacted on January 10, 1996, provides in part: "(a) No State may impose an income tax on any retirement income of an individual who is not a resident or domiciliary of such State (as determined under the laws of such State)." Subsection (b) of § 114 goes on to identify the types of retirement income included within its ambit. The Oklahoma Tax Commission (OTC) does not argue the 1996 amendment is applicable to this matter—i.e. that the 1996 amended version of § 2357(B)(1) would provide any basis to deny the refund claim of these taxpayers. We also note that § 2357 was further amended in 1997 [1997 Okla. Sess. Laws, Ch. 294, § 22(West)], but the amendments were not in relation to § 2357(B)(1).

2. 68 O.S.1991, § 2373 was amended by the Legislature in 1993, 1996 and 1997. 1993 Okla. Sess. Laws, Ch. 146, § 25 (West); 1996 Okla. Sess. Laws, Ch. 289, § 9 (West); 1997 Okla. Sess. Laws, Ch. 294, § 23 (West). None of the amendments substantively changed the statute so as to effect the outcome of this particular case. Therefore, we cite to the 1997 statute.

3. Our factual recitation is generally taken from the parties' Stipulation of Facts (with exhibit attachments) filed with OTC on August 16, 1996.

4. In *Bufferd v. Commissioner of Internal Revenue*, 506 U.S. 523, 524–525, 113 S.Ct. 927, 122 L.Ed.2d 306 (1993), the United States Supreme Court generally set out the historical purpose of Subchapter S of the Internal Revenue Code. It was enacted in 1958 to eliminate tax disadvantages that might dissuade small businesses from adopting the corporate form and to lessen the tax burden on such businesses—achieving these goals by means of a pass-through system where corporate income, losses, deductions and credits are attributed to individual shareholders in a manner akin to the tax treatment of partnerships.

working in New York, the corporation established and funded a pension plan for Dr. Neer. In addition, he had assets in an Individual Retirement Account (IRA) and Keogh Plan.

¶ 5 In 1991 an actuary determined Dr. Neer's pension plan was over-funded because it held about $3.5 million in assets, while the plan's limit was ascertained to be $3 million. As a result of the over-funding, $492,000 reverted to the corporation and this corporate income flowed through to taxpayers. Additionally, Dr. Neer received 1991 IRA and Keogh distributions of approximately $210,000.

¶ 6 On April 15, 1992 taxpayers filed their individual Oklahoma tax return, reporting the $492,000 pension plan distribution and the $210,000 IRA and Keogh distributions as Oklahoma income and they paid Oklahoma income tax of $44,910 for tax year 1991.[5] They did not file an individual New York tax return for 1991. Therefore, in relation to their 1991 Oklahoma individual income tax return and the income tax paid to Oklahoma in April 1992, no credit for any taxes paid to New York was taken because they had paid no taxes to New York at the time of their April 1992 Oklahoma income tax payment. As taxpayers state in their November 30, 1998 brief on certiorari (pg. 9), they and their tax advisor believed the 1991 retirement income—i.e. the pension, IRA and Keogh income—was not taxable in New York.

¶ 7 In June 1994 the New York Department of Taxation and Finance submitted an

initial audit report to taxpayers concerning tax year 1991.[6] New York contended the retirement income was taxable in New York as New York source income, notwithstanding taxpayers' residence in Oklahoma at the time of distribution. The initial audit called for payment of $86,635.29 to New York for tax year 1991, consisting of $53,374.14 of tax and the rest, penalties and interest. Taxpayers did not request from OTC an extension of the refund limitation period concerning tax year 1991 upon receiving this audit or at any other time prior to submitting their refund claim to OTC.

¶ 8 For more than a year, aided by their attorney and accountant, taxpayers challenged the New York audit, maintaining the income was taxable in Oklahoma, not New York. In August 1995 the New York tax agency submitted its final audit report which, although evidencing a reduction in taxpayers' New York tax liability, still manifested a significant tax liability, which taxpayers paid on September 20, 1995. Taxpayers' income tax liability to New York (and accompanying Oklahoma credit) was not known or quantified until the New York tax agency made its final determination in the August 1995 audit report.

¶ 9 On or about November 21, 1995 taxpayers filed with Oklahoma a 1991 Form 511, "corrected return", with accompanying Schedule E. On or about December 5, 1995 they filed an Amended Individual Oklahoma Tax Return for calendar year 1991, with accompanying Schedule E.[7] The amended

---

5. Although the Stipulation of Facts (with attachments), note 3, *supra*, do not expressly indicate the entire $44,910 in Oklahoma income tax was actually paid when the 1991 Oklahoma tax return was filed on April 15, 1992—the attached return seems to show a large portion of the amount was actually transmitted in the form of estimated tax payments at a time **earlier** than April 15, 1992—the taxpayers have stated in their briefs to this Court that the Oklahoma income tax was paid by them on April 15, 1992. November 30, 1998 Appellants' Brief on Certiorari, pg. 2; September 14, 1998 Petition for Certiorari of taxpayers, pg. 2; October 10, 1997 Appellants' Brief in Chief, pg. 2. Admissions in an appellate brief are acceptable as material supplementing the record. *Deffenbaugh v. Hudson,* 1990 OK 37, 791 P.2d 84, 85 fn. 3. Thus, the record is sufficient to show taxpayers' acknowledgment that

the latest date on which Oklahoma income tax would be deemed paid would be on April 15, 1992. We also note OTC does not argue for any earlier payment date based on the apparent pre-April 15, 1992 estimated tax payments.

6. The Stipulation of Facts (with attachments), note 3, *supra*, also reflect an audit was sent concerning taxpayers' 1990 tax year, but no issue is raised in this appeal concerning that tax year.

7. In December 1995 taxpayers also filed an Amended Individual Oklahoma Tax Return for calendar year 1993. A refund was also claimed concerning their 1993 taxes. OTC allowed a refund in relation to the 1993 taxes and no issue is raised in this appeal about tax year 1993.

return applied a credit for tax paid to New York in the amount of $34,732, as calculated on the Schedule E and taxpayers sought this amount by their refund claim.[8]

¶ 10 OTC staff, relying on § 2373, denied taxpayers' refund claim solely because it was made more than three years after their 1991 Oklahoma income tax return was filed and Oklahoma income tax for tax year 1991 was paid in April 1992. Taxpayers protested the denial, which was assigned to an OTC Administrative Law Judge (ALJ). One argument raised by taxpayers to support their position the refund claim was timely was that the three year limitation period of § 2373 did not begin to run and, what they delineate as their cause of action for a refund did not accrue, until they paid New York tax in September 1995 because only then were they entitled to a credit against their Oklahoma income tax under § 2357(B)(1). The ALJ rejected the argument and recommended denial of the claim based on § 2373.[9]

¶ 11 Taxpayers next sought review before OTC via an application for *en banc* hearing. OTC adopted the ALJ's recommendation and denied the refund claim in June 1997. Taxpayers appealed and the COCA affirmed. Taxpayers petitioned for certiorari, which we granted in November 1998. Oral argument was held before this Court on December 9, 1998. We now affirm OTC's Order.

## PART III. IN UNAMBIGUOUS LANGUAGE, SECTION 2373 LIMITS THE AMOUNT OF A REFUND TO THE PORTION OF OKLAHOMA INCOME TAX PAID DURING THE THREE YEARS IMMEDIATELY PRECEDING THE FILING OF THE REFUND CLAIM.

¶ 12 It is necessary to understand two main statutes to resolve this matter— §§ 2357(B)(1) and 2373. Section 2357(B)(1) provides:

There shall be allowed as a credit against the tax imposed by Section 2355 of this title the amount of tax paid another state by a resident individual, as defined in Section 2353, paragraph 4, of this title, upon income received as compensation for personal services in such other state. The credit shall not exceed such proportion of the tax payable under Section 2355 of this title as the compensation for personal services subject to tax in the other state and also taxable under Section 2355 bears to the Oklahoma adjusted gross income as defined in Section 2353, paragraph 13, of this title.

Section 2373 states:

If, upon any revision or adjustment, including overpayment or illegal payment on account of income derived from tax-exempt Indian land, any refund is found to be due any taxpayer, it shall be paid out of the "Income Tax Withholding Refund Account", created by Section 2385.16 of this title, in the same manner as refunds are

---

**8.** The Stipulation of Facts (with attachments), note 3, *supra*, reflect that, in actuality, a refund of $35,022 was sought by taxpayers—$34,732 arising from the claimed tax credit for tax paid to New York and $290 representing an asserted decrease in tax liability resulting from an understatement of taxpayers' federal tax liability on the original 1991 Oklahoma return. Further, although the parties seem to agree the December 5, 1995 Amended Individual Oklahoma Tax Return, rather than the November 21, 1995 "corrected return", constituted the refund claim, even if the earlier November date was deemed the filing date of the refund claim for purposes of § 2373, the November 1995 date would still have been more than three years after taxpayers paid their 1991 Oklahoma income tax in April 1992.

**9.** Taxpayers also raised an alternative argument before the Administrative Law Judge (ALJ), which was likewise rejected. The argument was that if the three year period did commence running in April 1992, the three year period should be equitably tolled based on the equities involved in their case. Taxpayers abandoned this alternative argument when they sought *en banc* review before OTC and they have not raised it on appeal. Presumably, the equitable tolling argument was abandoned because it was grounded on a federal case from the United States Court of Appeals for the Ninth Circuit [*Brockamp v. United States*, 67 F.3d 260 (9th Cir.1995) ] that was reversed by the United States Supreme Court during the period between the parties' briefing before the ALJ and the ALJ's May 19, 1997 Findings, Conclusions and Recommendations. *See United States v. Brockamp*, 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997)(rejecting equitable tolling doctrine because Congress did not intend the doctrine to apply to the federal statutory time and related amount limitations in regard to federal tax refund claims).

paid pursuant to such section. The information filed, reflecting the revision or adjustment, shall constitute the claim for refund.

Except as provided in subsection H of Section 2375 of this title, **the amount of the refund shall not exceed the portion of the tax paid during the three (3) years immediately preceding the filing of the claim,** or, if no claim was filed, then during the three (3) years immediately preceding the allowance of the refund. However, this three-year limitation shall not apply to the amount of refunds payable upon claims filed by members of federally recognized Indian tribes or the United States on behalf of its Indian wards or former Indian wards, to recover taxes illegally collected from tax-exempt lands. In the case of any refund to a member of a federally recognized Indian tribe or to the United States on behalf of its Indian wards or former Indian wards, to recover taxes illegally collected on bonus payments from oil and gas leases located on tax-exempt Indian lands pursuant to this section, the Tax Commission shall pay interest on all refunds issued after January 1, 1996, at the rate of six percent (6%) per annum from the date of payment by the taxpayer to the date of the refund.

In cases where the Tax Commission and the taxpayer have signed a consent, as provided by law, extending the period during which the tax may be assessed, the period during which the taxpayer may file a claim for refund or during which an allowance for a refund may be made shall be automatically extended to the final date fixed by such consent plus thirty (30) days.

The Oklahoma Tax Commission may authorize the use of direct deposit in lieu of refund checks for electronically filed income tax returns. (emphasis added)

¶ 13 Although taxpayers recognize the three year period specified by the emphasized portion of § 2373 generally begins to run when the Oklahoma income tax is paid, they assert that because § 2357(B)(1) would not allow a credit against their 1991 Oklahoma income tax liability until they actually paid tax to New York, no cause of action for an Oklahoma refund accrued until September 1995—the month they paid the New York tax—and the three year period specified in § 2373 did not start to run until then. The argument, therefore, is that § 2373 is a "true" statute of limitation, rather than a provision akin to a statute of repose. We disagree.

¶ 14 Initially, we recognize four matters not in dispute in this appeal. First, taxpayers do not dispute that the retirement income distributed to them in 1991 was income taxable by Oklahoma, nor do they assert any lack of authority—on constitutional (state or federal) or other grounds—on Oklahoma's part to tax the income. Second, they raise no issue concerning New York's power to tax the same income.[10] Third, taxpayers do not

---

**10.** Prior to the federal government's enactment of 4 U.S.C.A. § 114 (West 1997), note 1, *supra,* some states subjected to taxation a non-resident retiree's retirement income as "source" income, where the non-resident retiree had been an employee or wage-earner in such state before retirement and the former employer had contributed to a qualified pension plan in that state during the retiree's working years, notwithstanding the fact the retiree's residence is in another state at the time the pension/retirement income becomes payable and is received by the retiree in the new residential state. Klaiman, *Take the Money and Run: State Source Taxation of Pension Plan Distributions to Nonresidents,* 14 Va. Tax Rev. 645, 645–646 (1995). An argument behind the power to tax such "source" income is that it is merely deferred compensation which a state has full authority to tax regardless of the beneficiary's domicile or residence at the time of receipt. *Id.* at 646. In 1995, approximately thirteen states,

including New York, had tax code provisions authorizing the taxation of former residents who received qualified pension plan distributions derived from employment within the state. *Id.* at 647. In order to lessen the burden of taxation by more than one state of the same income, most states granted tax credits in recognition of income tax paid to other states. *Id.* at 649. Subsection (B)(1) of § 2357 is the Oklahoma provision recognizing that an Oklahoma resident is entitled to a tax credit for taxes paid to another state upon income received as compensation for personal services performed in such other state. By rule, OTC considered retirement income of an Oklahoma resident taxed by a non-residential state as "source" income, to be compensation for personal services within the meaning of subsection (B)(1) and, thus, within the tax credit allowed by that statutory provision. Oklahoma Tax Commission Rule 710:50–15–72(b), Vol. 17 Oklahoma Administrative Code 205 (1996). Of

argue the applicability of any exception specified in § 2373.[11] They do not claim any Indian-based exception. Nor do they claim an exception under 68 O.S. Supp.1998, § 2375(H).[12] Fourth, as stated in **PART II, FACTUAL AND PROCEDURAL BACKGROUND,** *supra,* at no time during the three year period specified in § 2373 did taxpayers request from Oklahoma an extension of the refund limitation period· concern-

ing tax year 1991, i.e. OTC and these taxpayers did not at any time reach an agreement, as would have been allowed by § 2373's second to the last paragraph, to extend the tax assessment period which would have had the effect of also extending the three year period for refund claims.[13] With these recognitions, we turn to deciding the meaning of § 2373 and its interplay with § 2357(B)(1).

course, as stated in note 1, *supra,* after the January 1996 enactment of 4 U.S.C.A. § 114 (West 1997) by the federal government, the Oklahoma Legislature—later that same year—substantially amended 68 O.S.1991, § 2357(B)(1)[1996 Okla. Sess. Laws, Ch. 289, § 8 (West)] **to disallow any credit** against Oklahoma income tax for tax paid to another state by an Oklahoma resident individual with respect to any income specified in § 114 upon which a non-residential state **is prohibited** from imposing an income tax by the dictate of § 114. As stated in note 1, *supra,* OTC does not argue the 1996 amended version of § 2357(B)(1) would provide a basis to deny the refund claim of these taxpayers—i.e. if the claim was not otherwise barred by the force of § 2373.

**11.** An additional statutory exception to the refund limitation period of § 2373, not mentioned in § 2373, is found in 68 O.S.1991, § 2358.1. Section 2358.1 exempts from Oklahoma income tax the income of any United States Armed Forces personnel or civilian (and any income of their spouse or dependents) during the period such personnel or civilian is detained as a prisoner of war or listed as missing in action in any war or conflict with an enemy of the United States (and for the period remaining in such taxpayer's income tax year following the release of a POW or an MIA person being declared deceased). Section 2358.1 further essentially provides that if tax is paid on such exempt income, it shall be refunded and the limitation period on refunds shall not apply. Of course, the taxpayers here do not place reliance on § 2358.1, or any other delineated statutory exception, to render inapplicable the limitation period specified in § 2373.

**12.** The exception carved out in 68 O.S. Supp. 1998, § 2375(H) generally concerns the allowance of additional time for either OTC to assess income tax or an Oklahoma taxpayer to submit a refund claim in the situation where a change in a taxpayer's federal taxable income occurs and such change affects Oklahoma taxable income—the limitation period being tolled and extended until final determination of the federal tax dispute involving the federal taxable income, and a one year time period for a refund claim commencing from such final determination. *See In re Holt,* 1997 OK 12, 932 P.2d 1130, 1136 (seems clear that Legislature intended to keep open limitation period where taxpayer's federal return was in dispute—because state tax "piggy-backs" on

federal return, any eventual change in federal return would affect state tax, resulting either in deficiencies or refunds in regard to State income tax); *See also .O'Carroll v. Oklahoma Tax Com'n,* 1998 OK 6, 952 P.2d 45 (meaning of § 2375(H) explained).

**13.** OTC and a taxpayer may agree to extend the period for assessment of a tax pursuant to 68 O.S. Supp.1996, § 223, which provides:

(a) No assessment of any tax levied under the provisions of any state tax law except as provided in the following paragraphs of this section, shall be made after the expiration of three (3) years from the date the return was required to be filed or the date the return was filed, whichever period expires the later, and no proceedings by tax warrant or in court without the previous assessment for the collection of such tax shall be begun after the expiration of such period. No assessment shall be required if a report or return, signed by the taxpayer, was filed and the liability evidenced by the report or return has not been paid.

(b) Where before the expiration of the time prescribed in the preceding paragraph for the assessment of the tax, both the Tax Commission and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon, and the period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon. In those instances where the time to file a claim for a refund has not expired at the date the extension agreement is entered into, the entering into such an agreement shall automatically extend the period in which a refund may be allowed or a claim for a refund may be filed to the final date of such agreement.

(c) In the case of either a false or a fraudulent report or return, or failure to file a report or return, as required under any state tax law, the Tax Commission is authorized to compute, determine and assess the estimated amount of tax due from any information in its possession, or a proceeding in court may be begun for the collection of such tax without assessment at any time. The only difference in the 1996 version of § 223 from the 1991 provision was the addition, in 1996, of the last sentence of paragraph (a). 1996 Okla. Sess. Laws, Ch. 34, § 1 (West).

¶ 15 This Court is committed to the axiom that the determination of legislative intent controls statutory interpretation. *Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City,* 1995 OK 62, 901 P.2d 800, 803, *cert. denied,* 516 U.S. 1029, 116 S.Ct. 674, 133 L.Ed.2d 523 (1995). When reviewing **tax** statutes, just as with other statutes, a court's goal is to ascertain legislative intent and effectuate that intent. *Wilson v. State of Oklahoma ex rel. Oklahoma Tax Com'n,* 1979 OK 62, 594 P.2d 1210, 1212; *Affiliated Management Corp. v. Oklahoma Tax Com'n,* 1977 OK 183, 570 P.2d 335, 337. To ascertain intent, one should look to the language of the pertinent statute(s) and presume the legislative body intends what it expresses. *Id.*

¶ 16 A cardinal precept of statutory construction is that where a statute's language is plain and unambiguous, and the meaning clear and unmistakable, no justification exists for the use of interpretative devices to fabricate a different meaning. *In re Guardianship of Campbell,* 1966 OK 99, 450 P.2d 203, 205. Further, terms in a statute are given their plain and ordinary meaning, except when a contrary intention plainly appears [*Id.*] and the words of a statute should generally be assumed to be used by the lawmaking body as having the same meaning as that attributed in ordinary and usual parlance. *Matter of Income Tax Protest of Ashland Exploration, Inc.,* 1988 OK 23, 751 P.2d 1070, 1073. Where neither ambiguity or doubt exists, even the rule that weight is to be given to an administrative construction is inapplicable—i.e. administrative construction cannot override plain statutory language. *C.H. Leavell & Co. v. Oklahoma Tax Com'n,* 1968 OK 127, 450 P.2d 211, 215. Finally, the rule that tax statutes are to be construed in favor of the taxpayer does not apply if the statute(s) at issue contain no inconsistent provisions, no ambiguities, and no uncertainties. *Exxon Corp. v. Oklahoma Tax Com'n,* 1993 OK CIV APP 178, 873 P.2d 306, 309. In our view, no inconsistency, ambiguity or uncertainty exists in either § 2357 or § 2373 in relation to the issue before us, and the meaning of these legislative enactments is clear and unmistakable.

¶ 17 Section 2357(B)(1) allows an Oklahoma resident taxpayer a tax credit against their Oklahoma income tax liability for "the amount of tax **paid** another state" (emphasis added) upon personal services income also subject to Oklahoma income tax. OTC has by rule interpreted personal services income to include retirement income. OTC Rule 710:50–15–72(b), Vol. 17 Oklahoma Administrative Code 205 (1996). Under the plain and unambiguous language of § 2357(B)(1) then, a tax credit is available only when a resident taxpayer **pays** tax to another state. We, therefore, agree with taxpayers, entitlement to a tax credit under the clear language of § 2357(B)(1) did not arise until they paid tax to New York in September 1995.

¶ 18 Our agreement that a credit is available under § 2357(B)(1) only when tax is actually paid to another state **is not,** however, equivalent to a recognition that, if the credit is not taken at the time of payment of Oklahoma income tax—because tax has not been paid to the other state at such time—the credit may be used to support a refund claim submitted to OTC more than three years after a taxpayer has paid Oklahoma income tax on the involved income. This is so because, contrary to taxpayers' view that § 2373 is a statute of limitation, the provision instead is analogous to a statute of repose and the Legislature, by unmistakable language, intended § 2373 to act as a substantive limitation on the right to recover **any** amount as a refund when the claim for refund is filed more than three years after the date on which Oklahoma income tax is paid. In short, the relevant terms of § 2373 clearly evidence a legislative intent to craft an outer limit time boundary beyond which a taxpayer's right or ability to recover a refund no longer exists.

¶ 19 A statute of limitation extinguishes a remedy for an existing right by penalizing a party who sleeps on that right. *Reynolds v. Porter,* 1988 OK 88, 760 P.2d 816, 820. A statute of repose sets an outer chronological time boundary beyond which no cause of action may arise for conduct that would otherwise have been actionable. *St.*

*Paul Fire & Marine Ins. Co. v. Getty Oil Co.,* 1989 OK 139, 782 P.2d 915, 919; *Jaworsky v. Frolich,* 1992 OK 157, 850 P.2d 1052, 1054–1055. As we stated in *Reynolds v. Porter, supra,* 760 P.2d at 820:

> Modern limitations and statutes of repose are similar because they both provide repose for the defendant. Yet, they are significantly different since a statute of limitation merely extinguishes the plaintiff's remedy while a statute of repose [may] bar[ ] a cause of action before it arises. In practical terms, a statute of repose marks the boundary of a substantive right whereas a statute of limitation interposes itself only procedurally to bar the remedy after a substantive right has vested.
>
> The time prescribed by a statute of repose runs from a specific … event regardless of when the harm or damage occurs. A limitation period runs from the time the elements of a cause of action arise. (Footnotes omitted)

In essence, a statute of limitation is a procedural device and does not start to run until a cause of action accrues, i.e. at that point in time a plaintiff can successfully prove the elements of his/her claim. A statute of repose, in contrast, begins to run from a date certain, regardless of when a plaintiff may be able to bring a cause of action to successful conclusion.

¶ 20 Although previously we have generally referred to § 2373 as a statute of limitation [*See e.g. Redbird v. Oklahoma Tax Com'n,* 1997 OK 126, 947 P.2d 525; *Turner v. Oklahoma Tax Com'n,* 1993 OK 77, 858 P.2d 433] this Court has not formerly been called upon to definitively decide whether the provision was intended by the Legislature to be a statute of limitation or, instead, to function like a statute of repose by placing a substantive limitation—in the form of an outer time limit boundary—on a taxpayer's right or ability to recover a tax refund. We believe the latter was the manifest intention.

¶ 21 First off, even though, as noted, we have referred to § 2373 as a statute of limitation, this Court has unmistakably foreshadowed an understanding that a taxpayer may use § 2373 to recover a refund only for taxes

they have overpaid within three years preceding the date of the refund claim. *Turner, supra,* 858 P.2d at 434 fn. 1. Footnote 1 of *Turner* states in relevant part: "[u]nder … § 2373 taxpayers may claim refunds only for taxes that they have overpaid within three years preceding the date of the claim for refund.…. Because [taxpayers] paid the tax more than three years before they sought the refund [§ 2373] bars their recovery."

¶ 22 Second, the relevant phrase of § 2373, **"the amount of the refund shall not exceed the portion of the tax paid during the three (3) years immediately preceding the filing of the claim"**, does not fit the mold of legislative language utilized in a "true" statute of limitation. For example, § 2373's language is quite unlike that found in the introductory paragraph of 12 O.S. Supp.1996, § 95, the general statute of limitation for many civil actions, which provides: "[c]ivil actions other than for the recovery of real property can only be brought within the following periods, **after the cause of action shall have accrued**, and not afterwards[.]" (emphasis added) Instead, the plain language of § 2373, reads much more like the language used in a statute of repose because the three year time period starts to run or commences from the date of payment of Oklahoma tax—a specific event—irrespective of whether or not all the elements of a viable refund claim are then existent. Surely, any ordinary reading of the language seems to clearly evidence a legislative intent to place a substantive limitation on a taxpayer's right to recover any amount as a refund, where the refund claim is filed more than three years after the date on which Oklahoma income tax is paid.

¶ 23 As we view it, the language of § 2373 is akin to that found in 12 O.S.1991, § 109, which provides in relevant part: "[n]o action in tort to recover damages …" arising from defective design, planning, supervision or observation of construction or from the construction of an improvement to real property "shall be brought … more than ten (10) years after substantial completion of such an improvement." Section 109 has unequivocally been interpreted by this Court as a statute of repose that sets an outer bound-

ary in time beyond which no cause of action may arise. *Jaworsky v. Frolich, supra,* 850 P.2d at 1054–1055. As can be seen, the time periods delineated in both § 109 and § 2373 expressly commence from **specific events**— § 109 from substantial completion of an improvement to real property and § 2373 from payment of Oklahoma income tax. In the case of § 109, the period commences whether or not all of the elements necessary to support a viable tort action then exist. In the case of § 2373, the clock starts running whether or not all the elements necessary to support a viable refund claim are then present.

¶ 24 As applicable here, the plain import of § 2373's structure points to the conclusion that, when three years elapsed from the date of taxpayers' payment of Oklahoma income tax in April 1992 without the filing of a refund claim, any claim to a refund was destroyed or extinguished. This was so notwithstanding the fact that under § 2357(B)(1) entitlement to a credit had not yet arisen by virtue of the failure to pay tax to New York prior to the expiration of such three year period.[14]

¶ 25 Third, the view that § 2373 is analogous to a statute of repose, or a legislatively crafted outer limit time boundary beyond which a taxpayer's right or ability to recover a refund no longer exists, is consistent with case law from other jurisdictions in the area of interpreting tax refund limitation periods. In *United States v. Brockamp,* 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997) the United States Supreme Court held that Congress did not intend the equitable tolling doctrine to apply to the statutory time, and related amount, limitations for filing federal

tax refund claims. Part of the Supreme Court's rationale was the view that the amount-limitation time period of the federal statute, which is couched in similar language to the pertinent emphasized phrase of § 2373, imposed a substantive limitation on a taxpayer's ability to recover a refund. 117 S.Ct. at 851–852. Although the United States Supreme Court did not expressly state that the federal statute was akin or analogous to a statute of repose, federal Circuit court decisions that also rejected the equitable tolling doctrine and which were found by *Brockamp* to be correct in such regard, explicitly made the analogy. *Amoco Production Co. v. Newton Sheep Co.,* 85 F.3d 1464, 1472 (10th Cir.1996); *Webb v. United States,* 66 F.3d 691, 700–701 (4th Cir.1995), *cert. denied,* 519 U.S. 1148, 117 S.Ct. 1079, 137 L.Ed.2d 215 (1997); *See also Oropallo v. United States,* 994 F.2d 25, 31 (1st Cir.1993), *cert. denied,* 510 U.S. 1050, 114 S.Ct. 705, 126 L.Ed.2d 671 (1994).

¶ 26 The Supreme Court of Colorado has also held that state's refund limitation statute, which extends the time for filing a claim for refund by one year over the federal limitation period, was more appropriately characterized as a statute of repose, rather than a statute of limitation. *Kuhn v. Department of Revenue,* 897 P.2d 792, 797 (Colo.1995). Further, in a comparable factual situation to that before us here, the Oregon Tax Court, although not referring to Oregon's tax refund limitation statute as being akin to a statute of repose, rejected a refund claim of taxpayers as untimely, where the three year period of the involved refund statute had expired prior to the filing of a refund claim. *DeArmond v. Department of Revenue,* 14 Or. Tax 112, 1997

14. Taxpayers' assertion that § 2373 should be viewed as a statute of limitation and, thus, the three year period should be held not to have accrued until tax was paid to New York in September 1995, also appears at odds with the Legislature's carving out an exception for situations falling under § 2375(H), note 12, *supra.* Again, the exception of § 2375(H) generally concerns the allowance of additional time for either OTC to assess income tax or an Oklahoma taxpayer to submit a refund claim in the situation where a change in a taxpayer's federal taxable income occurs and such change affects Oklahoma taxable income—the limitation period being tolled and extended until final determination of the

federal tax dispute involving the federal taxable income, and a one year time period for a refund claim commencing from such final determination. If taxpayers' argument is correct that the limitation period of § 2373 does not commence until all the elements of a viable refund claim exist, there would seem to be no need for the § 2375(H) exception because, under their theory that § 2373 is a statute of limitation, an Oklahoma refund claim, in the situation where there is an ongoing federal tax dispute that affects Oklahoma taxable income, would not accrue until the federal tax dispute is finally resolved at the federal level.

WL 43195 (Or.Tax Ct.1997), *aff'm*, *DeArmond v. Department of Revenue*, 328 Or. 60, 968 P.2d 1280 (1998). The situation in *DeArmond* was comparable because it involved a claimed credit for tax paid to another state, Idaho, but no tax was actually paid by taxpayers to Idaho prior to the expiration of Oregon's applicable three year period—i.e. like here, entitlement to a tax credit did not arise until it was too late to obtain a refund.

¶ 27 Based on the above analysis, we conclude OTC was correct in denying taxpayers' refund claim as untimely under the command of § 2373. Were we to rule differently, i.e. that taxpayers' claim was timely, we would be doing nothing less than overriding the Legislature's judgment that such claims, when not subject to a specified statutory exception, are absolutely cut-off or barred if not filed within three years of the date on which a taxpayer's taxes are paid. This we decline to do because we must interpret the provision as written and it would be improper for us to invent some meaning not contemplated by the statutory language as expressed by the law-making body.[15]

## PART IV. TAXPAYERS HAD AVAILABLE ADEQUATE AVENUES TO PROTECT THEIR ABILITY TO OBTAIN A REFUND, BUT FAILED TO AVAIL THEMSELVES OF SAME.

¶ 28 We must also note that taxpayers were not without available adequate avenues to protect their ability to obtain a refund, but they failed to avail themselves of such avenues. Once it became apparent by the New York audit submitted to taxpayers in June 1994 that New York was attempting to tax the same income upon which they had already paid tax to Oklahoma, taxpayers could have sought from OTC, but did not, an extension of the three year period, as would have been allowed by the second to the last paragraph of § 2373. In June 1994 there was in excess of nine months left in the three year period specified in § 2373. No satisfactory explanation has been put forward by taxpay-

15. We have reviewed the cases relied on by taxpayers to support their view that § 2373 is a statute of limitation and find their arguments in regard to such cases unpersuasive to change our opinion that OTC correctly denied their refund claim as untimely. Two examples of such cases are *Estate of Kasishke v. Oklahoma Tax Com'n*, 1975 OK 133, 541 P.2d 848 and *Phillips Petroleum Co. v. Oklahoma Tax Com'n*, 1994 OK CIV APP 169, 888 P.2d 1038. The *Kasishke* case dealt with the doctrine of equitable recoupment. This doctrine provides that where the government timely assesses additional taxes relating to certain items associated with a single tax return, but a taxpayer's claim for a refund of taxes previously and erroneously paid in regard to other items associated with the same return is barred by a limitation period, a court should generally allow a taxpayer to set off the taxes previously and erroneously so paid against the additional assessment, even though no refund will be allowed because it is time-barred. The equitable recoupment doctrine is not applicable here. The *Phillips* case was a matter construing the assessment limitation period contained in 68 O.S.1981, § 223 (now 1996 Supp., note 13, supra)—it was not a refund claim situation covered by § 2373. Generally, § 223(a) requires that an assessment be made by OTC within three (3) years from the date a return is required to be filed or the date a return is filed, whichever period expires later. Although *Phillips* contains language to the effect that the § 223 assessment limitation period does not accrue until OTC has a viable cause of action against a taxpayer, the main thrust of the opinion was grounded on specific provisions of the Gross Production Tax Code, 68 O.S.1981, § 1001 et seq., as amended. In essence, the Court of Civil Appeals ruled in *Phillips* that the "return" referred to in § 223 included an amended return or report that was mandated to be filed by the Legislature in the Gross Production Tax Code whenever a purchaser of gas paid additional proceeds to a producer on past production and, therefore, the time period of § 223 did not commence until such an amended return or report was filed by the gas purchaser, notwithstanding three years had elapsed from the filing of an original return. *Phillips* is, thus, unconvincing to alter our disposition in this case.

We have also considered the 1990 decision of OTC construing § 2373 in an unrelated matter, *Oklahoma Tax Commission Precedential Order No. 90–12–18–27* (dated December 18, 1990), 1990 WL 485443—a copy of said decision being attached to taxpayers' December 11, 1998 Motion to Supplement Appellants' Brief on Certiorari with Additional Authority. Such decision does not alter our view in this matter and, as we previously stated in the text, where neither ambiguity or doubt exists, even the rule that weight is to be given to an administrative construction is inapplicable—i.e. administrative construction cannot override plain statutory language. *C.H. Leavell & Co. v. Oklahoma Tax Com'n*, 1968 OK 127, 450 P.2d 211, 215.

ers for their failure to avail themselves of this extension of time provision.

 ¶ 29 Further, at any time between the June 1994 New York audit and April 15, 1995 taxpayers could have filed a protective claim for refund. This would have put OTC on notice of their dispute with New York concerning the taxability of the retirement income in that state and the potentiality that an Oklahoma income tax refund would be due if they ultimately lost their dispute with New York and ended up having to pay tax to that state, as eventually turned out to be the case. Plainly, during such period of time taxpayers must be deemed to have had knowledge that they would potentially have a refund claim in Oklahoma. Protective refund claims have been recognized by OTC and by federal jurisprudence in analogous circumstances, where the final outcome or exact amount of a refund claim is unascertainable until after the legislatively-prescribed time limit on refund claims has expired, but within such time period the taxpayer has knowledge or should know that the possibility of a refund claim exists. *See Matter of Tax Protest of Arkla, Inc.,* 1996 OK CIV APP 5, 919 P.2d 1151, 1159 fn. 7; *Noram Energy Corporation, v. Oklahoma Tax Com'n,* 1995 OK CIV APP 149, 935 P.2d 389, 394; Oklahoma Tax Commission Precedential Order No. 92–11–24–008 (dated November 24, 1992, released November 1993), [1966 –1997 Transfer Binder] Oklahoma Tax Reporter, New Matters (CCH) ¶ 200–655 [16]; *See also Amoco Production Co. v. Newton Sheep Co., supra,* 85 F.3d at 1471–1472 and *Kellogg–Citizens National Bank of Green Bay, Wisconsin v. United States,* 165 Ct.Cl. 452, 330 F.2d 635, 638–640 (U.S.Ct.Cl.1964). Where a substantial part of the statutorily-prescribed time period on refund claims remains when a taxpayer learns of events causing, or likely to cause, a decrease in his/her tax liability, a protective refund claim should be filed during the prescribed period in order to preserve the viability of a refund claim. *Id.* If a protective claim is not filed within the specified period in such a situation, a refund claim will be

barred, notwithstanding the fact that the exact amount of a refund cannot be determined until after the time period has expired. *Id.*

## PART V. CONCLUSION.

¶ 30 When none of the statutorily delineated exceptions apply, as none do here, § 2373 acts in a manner akin to a statute of repose in that it acts as a substantive limitation on the right to recover **any** amount as a refund when the claim for refund is filed more than three years after the date on which Oklahoma income tax is paid. The three year time period of § 2373 starts to run from a specific event—the date of payment of Oklahoma income tax—and, as applicable here, the provision is a legislatively crafted outer limit time boundary beyond which taxpayers' right to a refund no longer exists. Further, during the three year period specified in § 2373 taxpayers in this case had available adequate avenues by which to protect their ability to obtain an Oklahoma income tax refund, but they failed to avail themselves of such avenues.

¶ 31 The Court of Civil Appeals' Opinion is **VACATED** and OKLAHOMA TAX COMMISSION ORDER NO. 97–06–24–007 is **AFFIRMED.**

¶ 32 SUMMERS, C.J., HARGRAVE, V.C.J., LAVENDER, OPALA, and ALMA WILSON, JJ., concur.

¶ 33 HODGES, SIMMS, KAUGER, and WATT, JJ., dissent.

---

**16.** Pursuant to 68 O.S.1991, § 221(g), orders which OTC deems to be of precedential value shall be published by OTC.