2001 OK CIV APP 140

**WESTERN HEIGHTS INDEPENDENT SCHOOL DISTRICT NO. I–41, Plaintiff/Appellee,**

v.

**AVALON RETIREMENT CENTERS, L.L.C. d/b/a Emerald Square Assisted Living Facility; Avalon Correctional Services, Inc.; and Southern Corrections Systems, Inc., Defendants/Appellants.**

No. 95,595.

Court of Civil Appeals of Oklahoma, Division No. 4.

Oct. 23, 2001.

Modified Dec. 18, 2001.

Amie Rose Colclazier, Colclazier & Associates, Seminole, OK, for Plaintiff/Appellee.

Eric S. Gray, Randall J. Wood, Oklahoma City, OK, for Defendants/Appellants.

Opinion by JOE C. TAYLOR, Judge.

¶1 Defendants, Avalon Retirement Centers, Avalon Correctional Services, Inc., and Southern Corrections Systems, Inc., appeal the trial court's order granting a temporary injunction enjoining them from operating a proposed halfway house within 1,000 feet of schools located within Western Heights Independent School District (School District). The issue on appeal is whether the trial court abused its discretion in granting the temporary injunction. We find that it did not and affirm.

¶2 Defendants own and operate an assisted living facility at 701 N. Council Road in Oklahoma City.[1] For economic reasons, Defendants sought a special permit from the City of Oklahoma City to change the facility into a transitional living facility/work release center (hereafter referred to as a halfway house) for inmates who have been sentenced to the custody of the Oklahoma Department of Corrections. School District operates two schools, Council Grove Elementary School and Western Heights Academy, in close proximity to the proposed halfway house.

---

1. The relationship and ownership interests of the respective Defendants is unclear from the record. However, as Defendants jointly appeal the order granting the injunction, we refer to them collectively.

¶ 3 School District brought this action seeking to enjoin Defendants from operating the assisted living facility as a halfway house. School District claims that operation of the halfway house would violate 57 O.S. Supp. 2000 § 563 (C) because the house would be located within 1,000 feet of its schools. Defendants argued that, if the distance between the halfway house and the schools is measured from building to building rather than from boundary line to boundary line, the location of the facility would not violate the dictates of § 563(C).

¶ 4 At the hearing on School District's request for a temporary injunction, the parties stipulated that, if measured from property line to property line, the proposed facility is located within 1,000 feet of School District's schools, but, if measured from building to building, the facility is not located within 1,000 feet of the schools. The trial court granted the temporary injunction, finding that the distance should be measured from property line to property line; and that, under this method, Defendants' proposed halfway house is located within 1,000 feet of the schools. Thus, the trial court enjoined Defendants "from the operation of a certain facility at 701 N. Council Road in Oklahoma City, Oklahoma for the housing of inmates from the State Department of Corrections." Defendants appeal the order granting the temporary injunction.

¶ 5 When it appears from a petition seeking injunctive relief "that the plaintiff is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission or continuance of some act, the commission or continuance of which, during the litigation, would produce injury to the plaintiff . . . a temporary injunction may be granted to restrain such act." 12 O.S.1991 § 1382. The award of injunctive relief is a matter of equitable concern, and we will not disturb the trial court's judgment granting such relief unless the trial court abused its discretion or its decision is clearly against the weight of the evidence. *Sharp v. 251st Street Landfill, Inc.,* 1996 OK 109, 925 P.2d 546.

¶ 6 Under the language of 12 O.S. 1991 § 1382, we must first determine wheth-

er it appears from School District's petition that it is entitled to the relief requested. Thus, we must construe the language of 57 O.S. Supp.2000 § 563 (C). In construing statutory language, a court's goal is to ascertain legislative intent. *Neer v. State ex rel. Okla. Tax Comm'n,* 1999 OK 41, 982 P.2d 1071. The best evidence of legislative intent is the statutory language itself. *Upton v. State ex rel. Dep't of Corrections,* 2000 OK 46, 9 P.3d 84.

¶ 7 Section 563(C) provides, in relevant part, as follows:

No state, county or municipal correctional facility including any inmate work center, inmate drug offender work camp, inmate halfway house, inmate transitional living center and any other place where state, county or municipal inmates are housed shall be located within one thousand (1,000) feet of any public or private elementary or secondary school. . . .

It is clear from the language of § 563(C) that its purpose is to separate correctional facilities from elementary and secondary schools. More particularly, the purpose is to separate the residents of correctional facilities from elementary and secondary school students. The purpose is not merely to separate the buildings of the facilities, particularly since students use the areas outside the school buildings and the inmates would use the areas outside the halfway house building.

¶ 8 Thus, although § 563(C) does not define how the 1,000 feet limitation is to be measured—whether from property line to property line or from building to building—the purpose of § 563(C) clearly is better served by an interpretation that measures from property line to property line. Because the parties stipulated that, using a property-line-to-property-line method of measurement, the halfway house would be within 1,000 feet of School District's schools, it appears that School District is entitled to the relief which it has requested. 12 O.S.1991 § 1382.

¶ 9 In support of the argument that the proper method of measurement is from building to building, Defendants point to the fact that other statutes have specifically stated the method for measuring. *See* 43A O.S.

Supp.2000 § 3–417.1 (distance between schools and mental health facilities is measured from property line to property line); 57 O.S. Supp.2000 § 563.1 (distance between schools and minimum and medium security prison facilities is measured from property line to property line); 37 O.S. Supp.2000 § 518.3 (distance between schools and bars or liquor stores is measured from property line of a school to perimeter wall of a bar or liquor store). However, the legislature, in enacting § 563(C), did not specify the method of measurement. Defendants argue that by omitting the property-line-to-property-line method of measurement from the language of the statute, the legislature clearly intended that the measurement be from building to building. We disagree.

¶ 10 Defendants' argument would have us leap to the conclusion that, because the legislature could easily have included the property-line-to-property-line method as it did in the other statutes, it clearly intended to use a building-to-building method. To the contrary, the fact that the legislature was silent as to the method to be used requires us to construe the legislature's intent, which we have done. Furthermore, "[d]ifferent statutes on the same subject are generally to be viewed as *in pari materia* and must be construed as a harmonious whole." *Taylor v. State Farm Fire & Cas. Co.*, 1999 OK 44, ¶ *19*, 981 P.2d 1253, 1261. The statutes upon which Defendants rely all relate to the same subject matter—the distance of schools from various facilities. By requiring a minimum distance between schools and mental health facilities, liquor stores, bars, and minimum and medium security correctional facilities, the legislature clearly evidenced an intent to separate students from residents and patrons of such facilities. Likewise, by requiring a minimum distance between schools and halfway houses, the legislature was evincing an intent to separate students from residents of the halfway houses. Upon reading the cited statutes *in pari materia,* we conclude that the proper method of measurement is property line to property line.

¶ 11 Defendants argue that School District is not entitled to injunctive relief because its action is premature in that Defendants have not received either the requested zoning permit or a contract from the Department of Corrections. We disagree. By seeking a special permit from the City of Oklahoma City, Defendants began the process designed to operate the Council Road facility as a halfway house. Such a facility would be in violation of § 563(C), and School District has the right to prevent the operation from occurring.

¶ 12 Defendants also argue that § 563(C) does not apply because Defendants' facility, as a privately owned facility, would not be a "state, county or municipal" correctional facility. Defendants would have us interpret § 563(C) differently as it applies to government-owned correctional facilities as opposed to privately held facilities. Such an interpretation is contrary to the purpose of § 563(C)—it is contrary to the intent of separating correctional facilities and their residents from schools and their students. Moreover, we do not believe that the legislature intended to allow a privately owned correctional facility, over which the Department of Corrections has less control, to be placed closer to a school than a government correctional facility. Furthermore, the broad language of § 563(C) makes it clear that it applies to all correctional facilities, regardless of ownership. In particular, § 563(C) refers to "any other place where state, county or municipal inmates are housed." Thus, the phrase "state, county or municipal" more appropriately refers to the inmates than it does to the type of ownership of the facility.

¶ 13 In addition to showing that it is entitled to the relief requested, School District was required, under § 1382, to show that it would be injured by Defendants' operation of the halfway house. "[A] violation of a state statute is an injury to the State and its citizens, and a continuing violation is an irreparable injury for which injunctive relief is available." *Semke v. State ex rel. Okla. Motor Vehicle Comm'n,* 1970 OK 15, ¶ 8, 465 P.2d 441, 444; *see also Independent Sch. Dist. No. 9 v. Glass,* 1982 OK 2, 639 P.2d 1233. Operation of a halfway house at the Council Road location would be a violation of § 563(C); thus, School District and the State would suffer injury if it were allowed to operate.

¶ 14 Defendants also ask this court to consider the alleged irreparable injury they will

suffer as a result of injunctive relief. As pointed out by the Oklahoma Supreme Court in *Fahr v. State ex rel. Adams*, 1951 OK 286, 237 P.2d 128, however, the temporary injunction in no way interferes with Defendants' lawful occupation of the Council Road property. "It is difficult to see how they are hurt by this injunction, as all it does is order them to obey the law." *Id.* at ¶ 11, 237 P.2d at 130.

¶ 15 School District has met its burden under 12 O.S.1991 § 1382 of showing that it is entitled to the relief requested and that operation of the halfway house, within 1,000 feet of the property line of the schools in question, would violate 57 O.S. Supp.2000 § 563 (C) and produce injury to School District. Therefore, the trial court did not abuse its discretion in granting a temporary injunction.

¶ 16 AFFIRMED.

STUBBLEFIELD, P.J., and RAPP, J., concur.