Dear Senator Crain,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Are the residency restrictions of the Sex Offenders Registration Act in 57 O.S. Supp. 2004, § 590[57-590], unconstitutionally vague?
 2. Do the Sex Offenders Registration Act's residency restrictions prohibit a registered sex offender from residing within a 2,000-foot radius of a school or educational institution if he or she lived there prior to being convicted of a crime for which registration is required?
 3. If the answer to Question 2 is yes, how may the residency restriction be enforced?
 4. Would any of the answers change if the sex offender moved into the residence and/or was convicted before the effective date of Section 590 of Title 57 (November 1, 2003)?
 I. Overview of the Sex Offenders Registration Act
¶ 1 In 1989 the Oklahoma Legislature enacted the Sex Offenders Registration Act ("Act"). See 1989 Okla. Sess. Laws ch. 212, §§ 1-7 (codified as amended at 57 O.S. 2001 Supp. 2004, §§581-590). The Act applies to "any person residing, working or attending school within the State of Oklahoma" who has been convicted of, or received a suspended sentence or other probationary term for, the commission or attempted commission of certain sex crimes.[1] 57 O.S. Supp. 2004, § 582[57-582](A). The Act requires these persons to register with the Department of Corrections and local law enforcement. Id. § 583. It also requires local law enforcement to provide notification regarding habitual and aggravated offenders to, among others, the offender's family, victims and portions of the community. Id. § 584(H)(3).
¶ 2 In 1998, the Legislature amended the Act to prohibit registered sex offenders from certain employment involving children and schools. 1998 Okla. Sess. Laws ch. 411, § 5 (codified as amended at 57 O.S. Supp. 2004, § 589[57-589](A)). In 2002, it extended this prohibition to include employment as a peace officer or criminal investigator. 2002 Okla. Sess. Laws ch. 460, § 35(C) (codified as amended at 57 O.S. Supp. 2004, § 589[57-589](C)). In 2003 the Legislature enacted a new section to the Act, this time to restrict registered sex offenders from residing within a certain distance from a school or educational institution. 2003 Okla. Sess. Laws ch. 223, § 1 (codified at 57 O.S. Supp. 2003, §590[57-590]). This provision became effective on November 1, 2003. See
2003 Okla. Sess. Laws ch. 223, § 2.
¶ 3 In an Attorney General Opinion issued prior to the addition of 57 O.S. Supp. 2004, § 590[57-590] to the Act, we concluded that the Act is a civil, nonpunitive regulatory scheme designed to protect the public against the threat posed by convicted sex offenders, even though the Act contains some criminal provisions. A.G. Opin. 03-24 at 136-37.[2] Section 590 of Title 57 supplements that regulatory scheme by protecting the public through providing protective zones around schools and educational institutions where registered sex offenders may not reside. This addition to the Act does not alter its character, as described in A.G. Opin. 03-24, as a civil, nonpunitive regulatory scheme.
 II. Is 57 O.S. Supp. 2004, § 590Unconstitutionally Vague?
¶ 4 You first ask whether 57 O.S. Supp. 2004, § 590[57-590] is unconstitutionally vague as applied to a registered sex offender who moved within 2,000 feet of a school or educational institution after being convicted of a crime that requires registration. Title 57 O.S. Supp. 2004, § 590[57-590] provides:
 It is unlawful for any person registered pursuant to the Oklahoma Sex Offenders Registration Act to reside within a two thousand-foot radius of any public or private school site or educational institution.
 Nothing in this provision shall require any person to sell or otherwise dispose of any real estate or home acquired or owned prior to the conviction of the person as a sex offender. Any person willfully violating the provisions of this section by intentionally moving into any neighborhood or to any real estate or home within the prohibited distance shall, upon conviction, be guilty of a misdemeanor punishable by a fine not to exceed Three Thousand Dollars ($3,000.00) on a first offense, and any second or subsequent offense shall be punishable by incarceration for one (1) year in the county jail in addition to such fine.
Id.
¶ 5 You first ask whether the statute is "unconstitutionally vague." Vagueness analysis is generally applied to criminal statutes. Section 590 of Title 57 is part of the Act, a civil, nonpunitive regulatory scheme that includes criminal penalties. While the statute is not exclusively criminal, it contains a criminal provision. Therefore, a vagueness analysis is appropriate.
¶ 6 In Edmondson v. Pearce, 91 P.3d 605 (Okla. 2004), the Oklahoma Supreme Court articulated the constitutional test for vagueness. It held:
 As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people understand what conduct is prohibited and in a manner that does not encourage arbitrary discriminatory enforcement.
Id. at 629 (quoting Kolender v. Lawson, 461 U.S. 352, 357
(1983)).
¶ 7 The test has two components. A statute must be sufficiently clear and explicit so that a person of ordinary intelligence knows what is prohibited and when the statute is being violated. It must also contain sufficient guidelines to protect against arbitrary and discriminatory application of the law. Id. at 630.
¶ 8 Title 57 O.S. Supp. 2004, § 590[57-590] has three distinct sections. The first provision of the statute creates a general civil regulation that restricts "any person" who is a registered sex offender from residing within a 2,000-foot radius of a public or private school site or educational institution. The second part of the statute acts to clarify the first provision. It states, "Nothing in this provision shall require any person to sell or otherwise dispose of any real estate or home acquired or owned prior to the conviction of the person as a sex offender."Id. The plain meaning of this statement is that the statute's residency restriction does not require a person to divest himself or herself of any property that was held prior to the conviction. This second provision limits the scope of the residency restriction in that the regulation is confined to a prohibition against occupying a property for the purpose of residing. The statute does not ban a registered sex offender from owning or possessing property within the protected area. Similarly, it does not bar the person from being present on property within the 2,000 foot radius. Rather, the general restriction limits only the manner in which property is used.
¶ 9 The final part of the statute criminalizes certain willful behavior. Specifically, it is a misdemeanor for a registered sex offender to willfully violate the residency restriction by intentionally establishing a residence within a 2,000 foot radius of a public or private school site or educational institution.
¶ 10 The acts prohibited by the statute are identified in clear, unambiguous terms. A person of ordinary intelligence is capable of understanding and distinguishing the meanings of "reside" and "moving into." The phrase "public or private school site or educational institution" is sufficiently descriptive to identify the places referenced. 57 O.S. Supp. 2004, § 590[57-590].
Additionally, the use of "two thousand-foot radius" clearly establishes the prohibited zone. Therefore, the statute is not unconstitutionally vague as applied to registered sex offenders who move within a two thousand-foot radius of a school or educational institution after being convicted of a crime that requires registration.
 III. Application and Enforcement of the General Residency Restriction to a Registered Sex Offender Who Lived Within 2,000 Feet of a School or Educational Institution Prior to Being Convicted of a Crime for which Registration is Required
¶ 11 You next ask whether a registered sex offender may reside within 2,000 feet of a school or educational institution if he or she lived there prior to being convicted of the crime for which registration as a sex offender was required. A person who resides in a home prior to being convicted of a crime that requires registration is not subject to the criminal provisions of 57O.S. Supp. 2004, § 590[57-590]. However, the person would violate the civil provision of the statute which prohibits any person who is a registered sex offender from residing within a statutorily created zone. Thus, a registered sex offender is required to move from the prohibited zone after the conviction which requires the registration.
 IV. Enforcement of the Civil Statutory Provision
¶ 12 In your third question you ask about enforcement of the residency restriction. The penalty for a violation of the criminal provision is explicit; intentionally moving within 2,000 feet of a school site, after conviction, is punishable by a fine and/or imprisonment. See 57 O.S. Supp. 2004, § 590[57-590]. The responsibility for prosecution would rest with the district attorney. 19 O.S. 2001, § 215.4[19-215.4]. However, the enforcement mechanism for a violation of the residency restriction is not explicitly stated nor is a remedy at law expressly provided. The residency restriction is part of the Act's civil regulatory scheme. Therefore, it is properly characterized as a civil provision.
¶ 13 Article II, Section 6, of the Oklahoma Constitution "mandates that the courts should be open and afford a remedy for those wrongs that are recognized by the law of the land." Rivasv. Parkland Manor, 12 P.3d 452, 458 (Okla. 2000). Title 57O.S. Supp. 2004, § 590[57-590] clearly recognizes as a civil wrong a registered sex offender residing within a protected area. However, the statute does not identify a remedy for that wrong. "When a remedy for any particular wrong or injury has been provided by statute, generally no redress can be afforded by injunction." Indep. Sch. Dist. No. 9 v. Glass, 639 P.2d 1233,1237 (Okla. 1982). However, "[i]f the statutory remedy is obviously inadequate, injunction may lie." Id. It is well established that "[a] violation of a state statute is an injury to the State and its citizens[, and a] continuing violation is an irreparable injury for which injunctive relief is available."Id.; see Semke v. State ex rel. Okla. Motor Vehicle Comm'n,465 P.2d 441, 445 (Okla. 1970.)
¶ 14 Before redress can be sought from the courts, a party must have "a sufficient interest in an otherwise justiciable controversy to obtain judicial resolution of the controversy."Ind. Sch. Dist. No. 9, 639 P.2d at 1237. In Western HeightsIndependent School District No. I-41 v. Avalon RetirementCenters, L.L.C., 37 P.3d 962, 965-66 (Okla.Ct.App. 2001), the Oklahoma Court of Civil Appeals upheld an injunction obtained by a school district against two companies who were in violation of a state statute that prohibited the location of an inmate halfway house within 1,000 feet of a school. The situation presented by your question is analogous to that found in WesternHeights. Therefore, a school or other party with standing may seek an injunction against a registered sex offender who is in violation of the residency restriction.
¶ 15 Additionally, State nuisance laws, found at 50 O.S. 2001,§§ 1[50-1] through 21, may also provide an avenue of enforcement. Those laws provide, "[a] nuisance consists in unlawfully doing an act . . . which . . . injures or endangers the comfort, repose, health, or safety of others; or . . . [i]n any way renders other persons insecure in life."Id. § 1. The statutes identify two classes of nuisances: public and private. "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal." Id. § 2. All other nuisances are deemed to be private. Id. § 3. A district attorney has the power generally to seek injunctive relief to "suppress the keeping and maintaining of a common nuisance." 12 O.S. 2001, § 1397[12-1397].
Therefore, a district attorney has the discretionary authority to seek an injunction to enforce the civil provisions of 57 O.S.Supp. 2004, § 590[57-590], if the violation of such constitutes a public nuisance.
 V. Retrospective Application of 57 O.S. Supp. 2004, § 590[57-590]
¶ 16 Finally, you ask whether the above analysis would change if the registered sex offender resided in the prohibited area or was convicted prior to November 1, 2003, the effective date of57 O.S. Supp. 2004, § 590[57-590]. The primary issue to be considered is whether such an application would violate the Ex Post Facto
Clause of the United States Constitution.
¶ 17 The United States Constitution prohibits states from enacting "ex post facto laws." U.S. Const. art. I, § 10, cl. 1. The United States Supreme Court has long recognized four classes of ex post facto laws. Stogner v. California, 539 U.S. 607,612 (2003). An ex post facto law is one that: makes an act criminal that was innocent when the act was done; aggravates a crime or makes it greater than it was when committed; inflicts a greater punishment for a crime than when the crime was committed; or alters the rules of evidence to lessen the burden needed to prove the crime occurred. Id.
A. Title 57 O.S. Supp. 2004, § 590[57-590], under the Scrutiny ofSmith v. Doe
¶ 18 In Smith v. Doe, 538 U.S. 84 (2003), the United States Supreme Court considered whether the application of Alaska's sex offender registration statute to persons convicted prior to its effective date was a retroactive punishment prohibited by the ExPost Facto Clause of the United States Constitution. The Court held that because the law was nonpunitive, its retroactive application did not violate the Ex Post Facto Clause. Id. at 105-06.
¶ 19 The analysis in Smith, even though it addressed only registration requirements and not residency restrictions, is controlling in this matter. In Smith, the first line of inquiry was to determine whether the statutory scheme in question was civil or criminal. Id. at 92. The Court said:
 We must "ascertain whether the legislature meant the statute to establish `civil' proceedings." If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is "`so punitive either in purpose or effect as to negate [the State's] intention' to deem it `civil.'"
Id. (citations omitted.)
¶ 20 As stated previously, 57 O.S. Supp. 2004, § 590[57-590] is part of the Sex Offenders Registration Act. The purpose of the Act is made clear in 57 O.S. 2001, § 581[57-581](B). It provides:
 The Legislature finds that sex offenders who commit other predatory acts against children and persons who prey on others as a result of mental illness pose a high risk of re-offending after release from custody. The Legislature further finds that the privacy interest of persons adjudicated guilty of these crimes is less important than the state's interest in public safety. The Legislature additionally finds that a system of registration will permit law enforcement officials to identify and alert the public when necessary for protecting public safety.
Id.
¶ 21 Taken as a whole, the Act is a civil, nonpunitive regulatory scheme designed to protect the public from the threat posed by sex offenders. 57 O.S. 2001, § 581[57-581](B); see A.G. Opin. 03-24, at 135-36. However, as outlined above in part II, Section 590 of Title 57 contains a criminal provision and a civil provision which must be considered separately.
B. Analysis of the Criminal Provision
¶ 22 First, we review the criminal provision of the statute. The Ex Post Facto Clause applies to criminal statutes and bars their application from conduct committed prior to enactment. Under 57 O.S. Supp. 2004, § 590[57-590], it is a misdemeanor for a registered sex offender to intentionally move into a residence within the prohibited area. Therefore, it would be unconstitutional to charge a person criminally for moving into a prohibited area prior to November 1, 2003, because before that date it was not a crime for a registered sex offender to live in a prohibited area. However, it should be noted that the Ex PostFacto Clause would not prohibit application of the statute's criminal provision to a person who moved in after the effective date of Section 590, but was subject to the Act prior to November 1, 2003. This is because the conduct, moving into the prohibited area, occurred after the effective date.
C. Is the Civil Provision so Punitive in Purpose or Effect toRender it a Punishment?
¶ 23 As explained above, 57 O.S. Supp. 2004, § 590[57-590] also contains a civil provision and implicitly provides for civil proceedings. However, it may not be applied retrospectively if it is "so punitive either in purpose or effect" as to render it a punishment. Smith, 538 U.S. at 92. In determining whether the effects of the Alaska law were punitive, the Supreme Court considered several factors from Kennedy v. Mendoza-Martinez,372 U.S. 144, 168-69 (1963). See Smith, 538 U.S. at 97. The Court stated that these factors are "`neither exhaustive nor dispositive,' but are `useful guideposts.'" Id. (citation omitted). The Court said:
 The factors most relevant to our analysis are whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose.
Id.
1. The residency restriction does not resemble traditionalpunishment.
¶ 24 In considering whether the registration and notification requirements had been utilized as a punishment traditionally, the Court looked to whether they resembled "shaming punishments of the colonial period." Smith, 538 U.S. at 97. Of these historical punishments, the Court observed:
 Some colonial punishments indeed were meant to inflict public disgrace. Humiliated offenders were required "to stand in public with signs cataloguing their offenses." At times the labeling would be permanent: A murderer might be branded with an "M," and a thief with a" T." The aim was to make these offenders suffer "permanent stigmas, which in effect cast the person out of the community." The most serious offenders were banished, after which they could neither return to their original community nor, reputation tarnished, be admitted easily into a new one.
Id. at 97-98 (citations omitted.)
¶ 25 The Oklahoma residency restriction differs from these traditional shaming punishments, including banishment. It does not permanently banish a registered sex offender from his or her former community. Rather, it identifies specific areas in which the person cannot live. A registered sex offender may still own or possess property within that area and may work and visit there. Additionally, the residency restriction applies only for the period of time that the person is required to register. This restriction, when analyzed, does not meet the test for being a traditional punishment.
 2. The residency restriction does not impose a punitive disability or restraint.
¶ 26 The next factor to consider is whether the residency restriction imposes an affirmative disability or restraint. For purposes of this analysis it is important to recognize that an "affirmative disability or restraint" does not mean any burden whatsoever; rather, it refers to those disabilities and restraints traditionally associated with punishment. SelectiveServ. Sys. v. Minn. Pub. Interest Research Group,468 U.S. 841, 853 (1984) (citation omitted). As the Court had previously observed:
 Punishment presupposes an offense, not necessarily an act previously declared criminal, but an act for which retribution is exacted. The fact that harm is inflicted by governmental authority does not make it punishment. Figuratively speaking all discomforting action may be deemed punishment because it deprives of what otherwise would be enjoyed. But there may be reasons other than punitive for such deprivation. A man may be forbidden to practice medicine because he has been convicted of a felony, or because he is no longer qualified[.] "The deprivation of any rights, civil or political, previously enjoyed, may be punishment, the circumstances attending and the causes of the deprivation determining this fact."
United States v. Lovett, 328 U.S. 303, 324 (1946) (Frankfurter J., concurring) (citations omitted).
¶ 27 The residency restriction imposes a burden upon registered sex offenders in that it restrains them in the use and occupancy of certain property as a residence. The question is whether that burden is of the sort associated with punishment. While the restriction does involve an element of physical restraint, it "does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint." Smith,538 U.S. at 100. Rather, the residency restriction is comparable to occupational debarment in that the burden imposed is not an absolute restraint on having a residency or making a living. Instead, it is only a restriction on the manner in which it is accomplished, and thus, is not flawed.[3]
 3. The residency restriction does not promote the traditional aims of punishment.
¶ 28 The next factor to consider is whether the residency restriction promotes the traditional aims of punishment — deterrence and retribution. The primary goal of the residency restriction is to protect the public against the danger of recidivism by sex offenders. However, the fact that the statute has as its objective the protection of the public from a present and future threat does not necessarily render the provision a punishment. Smith said:
 Any number of governmental programs might deter crime without imposing punishment. "To hold that the mere presence of a deterrent purpose renders such sanctions `criminal' . . . would severely undermine the Government's ability to engage in effective regulation."
Smith, 538 U.S. at 102. (quoting Hudson v. United States,522 U.S. 93, 105 (1997)).
¶ 29 In Smith, the United States Court of Appeals for the Ninth Circuit initially held the Alaska act was retributive because the period for registration appeared "to be measured by the extent of the wrongdoing, not by the extent of the risk posed." Smith, 538 U.S. at 102 (citation omitted). The Alaska act determined the length of registration for sex offenders based on whether the individual was convicted of aggravated or multiple offenses or a single non-aggravated offense. Oklahoma law makes similar distinctions. However, the United States Supreme Court held that the Alaska scheme was "reasonably related to the danger of recidivism, and this is consistent with the regulatory objective." Id. Thus, under Smith, the same rationale would validate the Oklahoma Act.
 4. The Residency Restriction is Connected to a Nonpunitive Purpose
¶ 30 Another consideration in determining whether the effect of the residency restriction is punitive is the rational connection of the regulation to a nonpunitive purpose. Smith,538 U.S. at 102-03. The State has a legitimate interest in protecting its citizens, especially its children, from the threat posed by sex offenders. The residency restriction furthers this nonpunitive objective by limiting the ability of known sex offenders to live within close proximity to where a significant number of their potential victims congregate. Therefore, a significant rational connection can be drawn between the residency restriction and the Act's nonpunitive objectives.
 5. The residency restriction is not excessive.
¶ 31 The final factor considered by Smith was whether the regulatory scheme was excessive in light of its objective.Smith said:
 The excessiveness inquiry of our ex post facto
jurisprudence is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective.
Smith, 538 U.S. at 105.
¶ 32 The primary criticism of the Alaska law by the Court of Appeals for the Ninth Circuit was that it applies to all registered sex offenders, regardless of the future danger posed. Similarly, 57 O.S. Supp. 2004, § 590[57-590] applies to all registrants, without consideration of the threat any particular offender might pose to the public at large or children in particular. In rejecting the argument that the Alaska act was excessive Smith held:
 The Ex Post Facto Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences. We have upheld against ex post facto challenges laws imposing regulatory burdens on individuals convicted of crimes without any corresponding risk assessment.
Smith, 538 U.S. at 103-04. Therefore, the Oklahoma residency restriction would not be so excessive as to render it punitive.
 6. Other considerations ¶ 33 Smith did not consider two of the factors addressed in the Mendoza-Martinez case — "whether the regulation comes into play only on a finding of scienter and whether the behavior to which it applies is already a crime" — because the Court did not view them as relevant to the case. Smith, 538 U.S. at 105. They are, however, important to our consideration here.
 a. The residency restriction does not require scienter.
¶ 34 The first of the factors is whether a finding of scienter (knowledge) is required for the civil provision to apply. The civil provision does not require proof of any degree of intent to violate the residency restriction. This is important because it distinguishes the statute's civil provision from the criminal provision, which punishes a person for "willfully violating" the statute "by intentionally moving into" a prohibited area.57 O.S. Supp. 2004, § 590[57-590] (emphasis added).
 b. The residency restriction does not regulate what is otherwise a crime.
¶ 35 The next factor, not addressed by Smith, is whether the act prohibited by the civil regulation is otherwise a crime. As with the prior consideration, the importance of this factor rests primarily in the fact that it sets the civil provision apart from the criminal. It is not a criminal act for a registered sex offender to reside within a 2,000-foot radius of a school site or educational institution. Rather, it is a crime only for him or her to intentionally move into the prohibited area. Alternatively, the civil restriction provides protection to the public without punishing the sex offender.
¶ 36 Based on the analysis in Smith, the civil regulation of57 O.S. Supp. 2004, § 590[57-590] is not so punitive in purpose or effect to render it a punishment. Therefore, it may be applied retrospectively to persons who were registered sex offenders prior to November 1, 2003.
¶ 37 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The residency restrictions of the Sex Offenders Registration Act ("Act") in 57 O.S. Supp. 2004, § 590[57-590], are not unconstitutionally vague.
 2. After November 1, 2003, the Act prohibits all registered sex offenders from residing within a 2,000-foot radius of a public or private school site or educational institution, regardless of whether the person lived at the property before being convicted of the crime for which registration is required. Id. However, a registered sex offender is not required to sell or otherwise dispose of property within the prohibited area. Id.
 3. A. A public or private school or educational institution, or other party with standing, may seek to enjoin a registered sex offender from residing within a 2,000-foot radius of a school or educational institution. Western Heights Ind. Sch. Dist. No. I-41 v. Avalon Retirement Centers, 37 P.3d 962, 965-66 (Okla.Ct.App. 2001).
 B. A District Attorney, in his or her discretion, may seek to enjoin a registered sex offender from residing within a 2,000-foot radius of a school or other educational institution if the occupancy constitutes a violation of the nuisance statutes. 12 O.S. 2001, § 1397[12-1397].
 4. A. The criminal provision of 57 O.S. Supp. 2004, § 590, may be applied to persons who moved into the prohibited area after the effective date of Section 590, but were convicted prior to the effective date. The criminal provision may not be applied to a person who moved into a prohibited area prior to November 1, 2003.
 B. The civil provision of 57 O.S. Supp. 2004, § 590[57-590] may be applied retrospectively to persons who lived in a residence and/or were registered sex offenders prior to November 1, 2003 without violating the Ex Post Facto Clause of the United States Constitution. See Smith v. Doe, 538 U.S. 84, 105-06 (2003).
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 D. CASEY DAVIS Assistant Attorney General
[1] The crimes for which a person must register are: child abuse involving sexual abuse or sexual exploitation (10 O.S. Supp. 2004, § 7115[10-7115]); assault with intent to commit any felony, if the offense involved sexual assault (21 O.S. 2001, § 681[21-681]); sexual abuse or exploitation by a caretaker (21 O.S. Supp. 2004, § 843.1[21-843.1]); kidnapping involving sexual abuse or exploitation (id.
§ 741); trafficking in children (21 O.S. 2001, § 866[21-866]); incest (id. § 885); crime against nature (21 O.S. Supp. 2004, § 886[21-886]); forcible sodomy (id. § 888); kidnapping a child (21 O.S. 2001, § 891[21-891]); indecent exposure, indecent exhibitions, the production or possession of obscenity or child pornography and involving a child in the same (21 O.S. 2001 Supp. 2004, §§ 1021 1021.2); permitting a child to be in pornography by a parent or guardian, (21 O.S. 2001, § 1021.3[21-1021.3]; using a computer to instigate sexual contact with a minor (21 O.S. Supp. 2004, § 1040.13a[21-1040.13a]); offering or transporting a child for purposes of prostitution (21 O.S. 2001, § 1087[21-1087]); child prostitution (id. § 1088); rape by instrumentation (id. § 1111.1); first and second degree rape (id. § 1114); and lewd or indecent proposals or acts with a child under 16 (21 O.S. Supp. 2004, § 1123[21-1123]). 57 O.S. Supp. 2004, § 582[57-582](A).
[2] At the time A.G. Opin. 03-24 was issued, the Act included criminal penalties for failing to comply with the registration requirements. Id. at 134. It also contained provisions that criminalized certain employment. Id.
[3] Smith said the registration requirements "are less harsh than the sanctions of occupational debarment, which we have held to be nonpunitive. See ibid. (forbidding further participation in the banking industry); De Veau v. Braisted, 363 U.S. 144,80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960) (forbidding work as a union official); Hawker v. New York, 170 U.S. 189, 18 S.Ct. 573,42 L.Ed. 1002 (1898) (revocation of a medical license)." Smith,538 U.S. at 100.