

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI,

    Plaintiff-Respondent,

vs.

MATTHEW JAMES LEE MCCORD,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

No. SD35696

**Filed: April 15, 2020**

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable David C. Jones, Circuit Judge

## AFFIRMED

Following a trial to the court, the trial court found that Matthew James Lee

McCord ("Defendant"), a registered sex offender, resided within 1,000 feet of Carver

Middle School between January 15 and April 21, 2017, in violation section 566.147,

RSMo 2016, as charged in Count II of a first amended information. The trial court

subsequently sentenced Defendant to four years in prison on that offense, but suspended

execution of that sentence and placed him on supervised probation for five years.[1]

---

[1] The trial court also found Defendant guilty of two other offenses charged in Counts I and III of the amended information involving Defendant's knowing failure to register as a sex offender on separate occasions, and imposed similar sentences for those offenses. Defendant does not appeal either of those findings or sentences.

Defendant appeals claiming in a single point that the rule of lenity requires reversal of the guilty verdict on that offense because the distance between Carver Middle School and the home where the trial court found Defendant resided was more than 1,000 feet if measured from school building to home rather than from property line to property line. We disagree, and affirm the trial court's judgment.

## Facts and Procedural Background

*Trial to the Court*

On Count II, the evidence at trial included the following.[2] Defendant had a prior Missouri conviction for statutory rape in the second degree that required him to register as a sex offender. The owner of a home located at 3241 West Glenwood Street in Springfield told the court (1) she and her husband had known Defendant "for a lot of years" as a "friend" of her daughter's, (2) Defendant was "living" in her home from January through April 2017, (3) Defendant shared a room in the home with a woman who rented the room and later became Defendant's wife, and (4) the home owner's daughter is the person who reported that Defendant was living at the home.

The Greene County sex offender registrar testified that she has access to a mapping system that is "accurate within 3 feet" and shows whether an address is within 1,000 feet of a school. "From property line to property line," 3241 West Glenwood Street was "approximately 839 feet" from Carver Middle School. The registrar indicated that she was "sure, if extended to the actual school, it would be outside the thousand feet."

---

[2] In deciding this appeal, we consider the facts and reasonable inferences drawn from the facts in the light most favorable to the trial court's verdict and disregard contrary evidence and inferences, *State v. White*, 583 S.W.3d 442, 443-44 (Mo.App. S.D. 2019), but include other evidence here to give context for Defendant's point relied on.

Defendant called two witnesses – his wife and his mother's boyfriend – and chose not to testify himself. Defendant's wife testified that she and Defendant were married on December 1, 2016, and, at that time, she was "living" on "Glenwood Street." Defendant's wife paid "$75 a week" rent for a room at the home. Defendant did not "move into" the home on Glenwood Street because the home was "too close to a school," but did "visit" her at the home "[t]hree to four times a week" though he never "stay[ed] the night" at the home or slept there during the day. Defendant did not have a key to his wife's room at the home or to the home. "[B]etween January and April of 2017," Defendant "resid[ed]" "[u]nder his mom's deck." Defendant's wife did not "recall" why Defendant did not sleep inside his mother's house. Defendant's mother's boyfriend testified that between January and April 2017, Defendant "lived," "stayed" in the boyfriend's "backyard."

The trial court subsequently found Defendant guilty of all three offenses charged in the amended information, and, as to Count II, expressly stated, "I specifically find -- base that on the property lines. In reviewing the law, I believe that the legislature clearly intends to protect children not only inside the building but also on the school grounds, which is why they arrive at that 1,000 feet."

Following the preparation of a sentencing assessment report, the trial court sentenced Defendant to four years on each count with the sentences to run consecutively, suspended execution of the sentence, and placed Defendant on supervised probation for five years. Defendant appeals from that judgment solely as to Count II.[3]

---

[3] Subsequently, in November 2018, the trial court revoked Defendant's probation, and amended Defendant's previously imposed sentence for which execution was suspended to four years on each count with the sentences to run concurrently, and executed that sentence. The State has not, to our knowledge, sought review of the amendment of the previously imposed sentence through an extraordinary writ or

**Analysis**

In a single point, Defendant asserts that the trial court erred in finding him guilty

and sentencing him on Count II because:

> where the plain and ordinary meaning of "within one thousand feet of" a public school in section 566.147 is inherently ambiguous as to whether a person's residence must be 1,000 feet from the property line of the school or the school building proper, the rule of lenity operates to give [Defendant] the most favorable construction of section 566.147 [-- that is, Defendant must not reside within one thousand feet of a public school] measured building-to-building . . . .

*Standard of Review and Generally Applicable Principles*

> "The proper interpretation of a statute is a question of law we review de novo." *State v. Spradling*, 413 S.W.3d 670, 673 (Mo. App. S.D. 2013). "The primary rule of statutory interpretation is to effectuate legislative intent through reference to the plain and ordinary meaning of the statutory language." *State v. Graham*, 204 S.W.3d 655, 656 (Mo. banc 2006).[4] "We particularly look to whether the language is clear and plain to a person of ordinary intelligence." *State v. Acevedo*, 339 S.W.3d 612, 617 (Mo. App. S.D. 2011). "We may not create an ambiguity where the words of a statute are plain." *State v. Downing*, 359 S.W.3d 69, 71 (Mo. App. W.D. 2011). "Statutory construction should be reasonable and logical." *Id*. Moreover, while the dictionary is frequently used as a tool in statutory interpretation, a dictionary definition is not the final source of guidance as to a word's plain and ordinary meaning. *State v. Payne*, 250 S.W.3d 815, 820 (Mo. App. W.D. 2008).

**State v. White**, 583 S.W.3d 442, 447 (Mo.App. S.D. 2019).

The rule of lenity requires that an ambiguity in a penal statute (i.e., criminal

statutes and also civil statutes with penal consequences) be construed against the

---

otherwise, and we do not address the trial court's authority to amend the previously imposed sentence. *See* **State ex rel. Poucher v. Vincent**, 258 S.W.3d 62, 65-66 (Mo. banc 2008) (declining to address the erroneous amendment of a previously imposed sentence because the State had not sought relief from the erroneous amendment with the result the erroneous amendment was not before the court); and **State ex rel. Zahnd v. Shafer**, 276 S.W.3d 368 (Mo.App. W.D. 2009) (writ of mandamus was an appropriate remedy to obtain review of an erroneous amendment of a previously imposed sentence).

[4] *See also* section 1.090, RSMo (2016) ("Words and phrases shall be taken in their plain or ordinary and usual sense, but technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import.")

4

government and in favor of the person on whom a penalty is sought to be imposed. ***Kersting v. Replogle***, 492 S.W.3d 600, 605, 605-07 (Mo.App. W.D. 2016).  By its terms then, the rule of lenity does not apply where a statute is unambiguous.  ***State v. White***, 583 S.W.3d at 448.  In addition, even when a statute is ambiguous, the rule of lenity is a default rule and "applies to interpretation of statutes only if, after seizing everything from which aid can be derived, [the court] can make no more than a guess as to what the legislature intended."  ***State v. Liberty***, 370 S.W.3d 537, 547 (Mo. banc 2012) (quoting ***Fainter v. State***, 174 S.W.3d 718, 721 (Mo.App. W.D. 2005)); ***Turner v. State***, 245 S.W.3d 826, 828 (Mo. banc 2008) (default rule), *superseded by statute on another ground*; *see also* ***State v. Ross***, 479 S.W.3d 140, 142 n.3 (Mo.App. S.D. 2015) (last resort).  When a statute is potentially ambiguous, before applying the rule of lenity, "a court is permitted to apply rules of statutory construction" including the rule that a criminal statute should be read with common sense – i.e., "that courts shall understand [words] as other people would."  ***Liberty***, 370 S.W.3d at 549 & n.16, 541, 553, 555.

A statute is ambiguous when its language is subject to more than one reasonable interpretation.  ***Id.*** at 548.

*Discussion*

We begin by noting that we believe Defendant's point raises an issue of first impression.  Our Supreme Court declined to "address[] the issue of whether the 1,000 foot measurement is from property line to property line or building to building" under an earlier version of section 566.147 in ***F.R. v. St. Charles County Sheriff's Department***, 301 S.W.3d 56, 64 n.13 (Mo. banc 2010), *declined to follow on another ground by* ***State v. Wade***, 421 S.W.3d 429, 434-35 (Mo. banc 2013), and we have been unable to locate

5

any other Missouri judicial authority that addresses this issue under section 566.147 or addresses comparable language in another statute with a purpose similar to section 566.147. We also have been unable to locate any non-Missouri judicial authority on this issue that interprets statutory language that is sufficiently similar to section 566.147 to provide us with meaningful guidance.[5]

At the time of the offense alleged in Count II, section 566.147.1, in relevant part, provided that a sex offender "shall not reside within one thousand feet of any public school as defined in section 160.011, any private school giving instruction in a grade or grades not higher than the twelfth grade, or any child care facility . . ., where the school or facility is in existence at the time the individual begins to reside at the location." Subsection 3 of the statute provided "[f]or purposes of this section, **'resides'** means sleeps in a residence, which may include more than one location and may be mobile or transitory." (emphasis in original).

Section 160.011(7), RSMo 2016, provided "public school" "includes all elementary and high schools operated at public expense," and paragraphs (2) and (5) of the statute defined "elementary school" as "a public school giving instruction in a grade or grades not higher than the eighth grade;" and "high school" as "a public school giving instruction in a grade or grades not lower than the ninth nor higher than the twelfth grade."

---

[5] The State refers us to ***Western Heights Independent School District No. I-41 v. Avalon Retirement Centers, L.L.C.***, 37 P.3d 962 (Okla.Civ.App. 2001), for an example of an appellate court's adoption of the rule that a minimum distance required between locations should be measured from property line to property line and not building to building. However, that decision involved a school district that successfully enjoined the proposed change of an existing assisted living facility to a halfway house for Oklahoma inmates. The applicable statute did not appear to have penal consequences and may have contained the phrase "on the grounds of" certain department of corrections facilities in a subsequent subsection of the statute. These differences from this appeal limit the persuasive value of that decision to our resolution of this appeal.

By its terms, section 566.147's clear purpose was to reduce the opportunity for sex offenders to victimize children by creating a one thousand foot buffer zone between the location where a sex offender "reside[s]" and elementary and secondary "school[s]" and "child care facilit[ies]." Section 566.147.1, RSMo 2016; *see also* ***F.R. v. St. Charles County Sheriff's Department***, 301 S.W.3d at 58, 59 (section 566.147 "prohibits convicted sex offenders from residing within 1,000 feet of any school or child-care facilities"); and ***F.R. v. St. Charles County Sheriff's Department***, 301 S.W.3d at 66-68 (Russell, J., dissenting) (section 566.147 "ha[s] been enacted by the legislature specifically to articulate conduct boundaries for child sex offenders that strive to prevent sex offenders from victimizing children," and authorities cited).

In light of section 566.147's statutory language and purpose, an appropriate definition of "school" is "a place where instruction is given," MERRIAM-WEBSTER INC., WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2031 (1986), and an appropriate definition of the "location" where a sex offender resides is "a place where something is or might be located," HOUGHTON MIFFLIN CO., THE AMERICAN HERITAGE DESK DICTIONARY 570 (1981). With these definitions in mind and reading the words of section 566.147 with common sense and understanding the words as other people would, we believe the only reasonable interpretation of the statute is that the distance between a school or child care facility and the location where a sex offender resides should be measured from property line to property line with the result that the rule of lenity does not apply.

We believe the common sense understanding of the word school in the context of a place where instruction is given includes not only the physical buildings encompassed

by the school, but also the grounds that adjoin the buildings and are available for necessary outdoor instruction (e.g., physical education, school sports, marching band and other large group extracurricular student activities) and outdoor student activities necessary for efficient learning (e.g., recess or other breaks in classroom instruction, and walking between buildings). Likewise, we believe the common sense understanding of the location where a sex offender resides includes not only the structure (or, in this case, room) in which the sex offender sleeps, but also any outbuilding or adjoining yard or open space in which the sex offender might be present as a matter of right arising from his residing at the location. In light of the legislature's clear purpose to create a buffer zone between designated places where children regularly are present and locations where sex offenders reside, the property lines of the school and of the location where the sex offender resides best define the places of concern to the legislature. The statutorily prescribed minimum distance between the school and the location where a sex offender may reside should be measured from property line to property line.[6]

If measured from property line to property line, Defendant does not dispute that the evidence was sufficient to permit a reasonable fact-finder to find beyond a reasonable doubt that 3241 West Glenwood Street was located within 1,000 feet of Carver Middle School. Defendant's point is denied, and the trial court's judgment is affirmed.

Nancy Steffen Rahmeyer, J. – Opinion Author

Gary W. Lynch, P.J. – Concurs

William W. Francis, Jr., J. – Concurs

---

[6] Our conclusion also is consistent with a 2018 amendment to section 566.147 that requires the prescribed minimum distance to be measured from the "edge of the offender's property nearest" the school (or other identified location) to the "nearest edge" of the school (or other identified location). Section 566.147.4, RSMo Cum.Supp. 2019.

8